ARSENE GAUTIER, Appellant, *v.* PRO-FOOTBALL, INC., Defendant, and AMERICAN BROADCASTING Co., INC., et al., Respondents.

Argued April 8, 1952; decided July 15, 1952.

*Harold M. Goldblatt* and *Louis P. Randell* for appellant.
I. The use of plaintiff's name and picture for advertising pur-
poses was a violation of sections 50 and 51 of the Civil Rights
Law for which defendants are answerable in damages.
(*Franklin* v. *Columbia Pictures Corp.*, 246 App. Div. 35, 271
N. Y. 554; *Binns* v. *Vitagraph Co.*, 210 N. Y. 51; *Redmond* v.
*Columbia Pictures Corp.*, 277 N. Y. 707; *Blumenthal* v. *Picture
Classics*, 235 App. Div. 570, 261 N. Y. 504; *Feeney* v. *Young*,
191 App. Div. 501; *Jackson* v. *Consumer Publications*, 169 Misc.
1022, 256 App. Div. 965; *Lane* v. *Woolworth Co.*, 171 Misc. 66,
256 App. Div. 1065; *Lahiri* v. *Daily Mirror*, 162 Misc. 776; *Kous-
sevitzky* v. *Allen, Towne & Heath*, 188 Misc. 479, 272 App. Div.
759; *Witmark & Sons* v. *Bamberger & Co.*, 291 F. 776.)
II. Plaintiff, as a public performer, did not waive his right of
privacy under the Civil Rights Law. (*Franklin* v. *Columbia
Pictures Corp.*, 246 App. Div. 35, 271 N. Y. 554; *Redmond* v.
*Columbia Pictures Corp.*, 253 App. Div. 708, 277 N. Y. 707;
*Lane* v. *Woolworth Co.*, 171 Misc. 66, 256 App. Div. 1065; *Fisher*
v. *Murray M. Rosenberg, Inc.*, 175 Misc. 370.) III. The acts
and conduct of which plaintiff complains occurred not in Wash-
ington, D. C., as respondents' counsel erroneously states, but
in New York. (*Ford* v. *Heaney*, N. Y. L. J., Aug. 3, 1915,
p. 1639.)

*Jonas T. Silverstone* and *Michael Rechler* for American
Guild of Variety Artists, *amicus curiæ*, in support of appel-
lant's position. I. The trial court properly found that although
appellant had objected, he was televised for "advertising
purposes". (*Witmark & Sons* v. *Bamberger & Co.*, 291 F.
776.) II. The trial court properly found that the telecast of
plaintiff did not constitute a public event or news. (*Redmond*
v. *Columbia Pictures Corp.*, 277 N. Y. 707; *Franklin* v. *Columbia
Pictures Corp.*, 271 N. Y. 554; *Binns* v. *Vitagraph Co.*, 210 N. Y.
51.) III. The trial court properly found that appellant did not
waive his rights to privacy. (*Redmond* v. *Columbia Pictures
Corp.*, 277 N. Y. 707; *Waring* v. *WDAS*, 327 Pa. 433.)

*Walter R. Barry* and *Carleton G. Eldridge, Jr.,* for respondents. I. Televising plaintiff's act did not constitute a violation of sections 50 and 51 of the Civil Rights Law. (*Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538; *Humiston* v. *Universal Film Mfg. Co.,* 189 App. Div. 467; *Jeffries* v. *New York Evening Journal Pub. Co.,* 67 Misc. 570; *Colyer* v. *Fox Pub. Co.,* 162 App. Div. 297; *Sidis* v. *F-R Pub. Corp.,* 113 F. 2d 806; *Koussevitzky* v. *Allen, Towne & Heath,* 188 Misc. 479, 272 App. Div. 759; *Lahiri* v. *Daily Mirror,* 162 Misc. 776; *King* v. *Winchell,* 248 App. Div. 809; *Wallach* v. *Bacharach,* 192 Misc. 979, 84 N. Y. S. 2d 894; *Damron* v. *Doubleday, Doran Book Shops,* 133 Misc. 302, 226 App. Div. 796.) II. Plaintiff as a public performer waived his right of privacy. (*Sweenek* v. *Pathe News,* 16 F. Supp. 746; *O'Brien* v. *Pabst Sales Co.,* 124 F. 2d 167, 315 U. S. 823; *Cohen* v. *Marx,* 211 P. 2d 320 [Cal.]; *Wilson* v. *Brown,* 189 Misc. 79; *Levey* v. *Warner Bros. Pictures,* 57 F. Supp. 40; *Toscani* v. *Hersey,* 271 App. Div. 445.) III. A nonfictionalized use of plaintiff's name and picture in a sponsored telecast does not *ipso facto* violate sections 50 and 51 of the Civil Rights Law. (*King* v. *Winchell,* 248 App. Div. 809; *Wallach* v. *Bacharach,* 192 Misc. 979; *Witmark & Sons* v. *Bamberger & Co.,* 291 F. 776; *Associated Music Publishers* v. *Debs Memorial Radio Fund,* 141 F. 2d 852.) IV. The acts and conduct of which plaintiff complains occurred in Washington, D. C. (*Banks* v. *King Features Syndicate,* 30 F. Supp. 352; *United States* v. *Smith,* 173 F. 227; *Fried, Mendelson & Co.* v. *Halstead, Ltd.,* 203 App. Div. 113; *Campbell* v. *Willmark Service System,* 123 F. 2d 204; *Haskell* v. *Bailey,* 63 F. 873; *Hull* v. *Vreeland,* 42 Barb. 543; *Vitolo* v. *Bee Pub. Co.,* 66 App. Div. 582; *Paxson* v. *Davis,* 62 D. C. App. 146; *Scheer* v. *Rockne Motors Corp.,* 68 F. 2d 942.)

FROESSEL, J. Plaintiff, alleging a violation of his right of privacy, brought this action in the City Court of New York City pursuant to the provisions of section 51 of the Civil Rights Law, which provides: '' Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without [such person's] written consent * * * may * * * sue and recover damages for any injuries sustained by reason of such use ''. Under section 50, such violation is a misdemeanor.

Plaintiff is a well-known trainer of animals. On December 5, 1948, he performed before an audience of 35,000 persons in Griffith Stadium, Washington, D. C., between the halves of a professional football game, pursuant to contract with Pro-Football, Inc., which owns the Washington Redskins football team. The contract was on the standard form of the American Guild of Variety Artists (AGVA), and provided that plaintiff's act should not be televised without the written consent and approval of AGVA. It does not appear that such consent was ever sought or obtained, prior to the televising of plaintiff's performance, although the performance in question was telecast in New York by defendant American Broadcasting Co., Inc., with the permission of the Washington television station, Pro-Football, Inc., and the commissioner of the National Football League. The trial court found that plaintiff made formal objection to being televised, and this finding was expressly approved by the Appellate Division.

The picture was sent by coaxial cable from Washington to New York and there transmitted to viewers from American's television station, WJZ-TV, while the audio portions were carried by direct wire, American's own announcer being employed. In the course of the program, paid commercial announcements were made in respect of defendant Liggett & Myers Tobacco Co.'s product, Chesterfield cigarettes, the same having been arranged by defendant Newell-Emmett Co. The telecast was viewed via an estimated 17,000 of the 370,000 sets then in use in the New York area. While defendants claim that any alleged wrong was committed in Washington and not in New York, we deem it self-evident on the foregoing facts that plaintiff's picture was " used within this state " (Civil Rights Law, § 51). So the courts below have held.

The manner in which plaintiff's act was presented was as follows: After the first half of the game, and immediately before plaintiff's act, a one-minute interim commercial announcement was made. Plaintiff's act was then presented for a period of seven or eight minutes, with a description by the announcer, but without any commercial reference; the announcer merely described to the audience the conduct of the act following a preliminary interview with plaintiff before the start of the game.

There were other acts following plaintiff's. Thereafter, and just before the start of the second half of the game, there was another interim commercial announcement.

The trial court accepted plaintiff's contentions that the foregoing use of his name and picture constituted a use for advertising purposes, and that the program was not of news or a public event. The Appellate Division held (278 App. Div. 431, 435, 439) that such mere use on a sponsored program, absent "exploitation of a name or picture in the commercial announcement or in direct connection with the product itself," does not constitute a violation of the statute as "advertising purposes". It was also held that plaintiff's name and picture were not used for "purposes of trade" under the well-recognized exception to the statute applied to media for the dissemination of news and information. That court took note of the fact that the only issues presented here pertain to the Civil Rights Law, and expressly left open the question whether plaintiff might recover "upon a proper record" under "any other legal theory."

In this State, the right of privacy rests solely in statute (*Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538; *Rhodes* v. *Sperry & Hutchinson Co.*, 193 N. Y. 223, affd. *sub nom. Sperry & Hutchinson Co.* v. *Rhodes*, 220 U. S. 502; Civil Rights Law, §§ 50, 51). As the *Roberson* and *Rhodes* cases show, the statute was born of the need to protect the individual from selfish, commercial exploitation of his personality. Nevertheless, in construing the act, it should be borne in mind that it is partly penal in effect (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51, 55; see Civil Rights Law, § 50). With these principles before us, can it be said that plaintiff's picture was used for advertising purposes?

Although the telecast was paid for by defendant Liggett & Myers Tobacco Co., the entire program was not thereby constituted a solicitation for patronage. In return for such payment, said defendant secured the right to solicit patronage on that program by means of commercial announcements. Unless plaintiff's name or picture were in some way connected with the "commercial", the mere fact of sponsorship of the telecast would not, in our opinion, suffice to violate the statute in this respect. Here no such connection was shown, for the commercial

announcements were presented at usual and appropriate intervals; it was nothing more than coincidence that one such announcement, made at the close of the first half, occurred immediately prior to his act. He was not connected with the product either by visual, oral or other reference, nor was any issue of fact created by the physical juxtaposition of the single announcement prior to his performance. We conclude, therefore, as did the Appellate Division, that there was no use of plaintiff's name or picture for *advertising* purposes, within the meaning of section 51 of the Civil Rights Law.

Like other media of communication, television may have either a trade aspect or an informative or news aspect. In the latter situation, it should be entitled to the same privilege accorded other such media where the statutory right to privacy is drawn in issue. It has long been recognized that the use of name or picture in a newspaper, magazine, or newsreel, in connection with an item of news or one that is newsworthy, is not a use for purposes of trade within the meaning of the Civil Rights Law (*Sidis* v. *F-R Pub. Corp.*, 113 F. 2d 806 [C. A. 2d], certiorari denied 311 U. S. 711; *Molony* v. *Boy Comics Publishers*, 277 App. Div. 166 [a comic book]; *Humiston* v. *Universal Film Mfg. Co.*, 189 App. Div. 467; *Lahiri* v. *Daily Mirror*, 162 Misc. 776; see *d'Altomonte* v. *New York Herald Co.*, 208 N. Y. 596, modfg. 154 App. Div. 453; see, also, *Callas* v. *Whisper, Inc.*, 303 N. Y. 759; Warren and Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193, 214). The connection must, of course, be a legitimate one; the individual may not be singled out and unduly featured merely because he is on the scene (*Blumenthal* v. *Picture Classics*, 235 App. Div. 570, affd. 261 N. Y. 504).

While one who is a public figure or is presently newsworthy may be the proper subject of news or informative presentation, the privilege does not extend to commercialization of his personality through a form of treatment distinct from the dissemination of news or information (*Redmond* v. *Columbia Pictures Corp.*, 277 N. Y. 707; *Franklin* v. *Columbia Pictures Corp.*, 246 App. Div. 35, affd. 271 N. Y. 554; *Binns* v. *Vitagraph Co.*, *supra*; *Sutton* v. *Hearst Corp.*, 277 App. Div. 155). Thus, in the *Redmond* and *Franklin* cases, the plaintiffs had been photographed for *newsreel* purposes, to which no objection was made. The

films were later sold and used as part of short feature pictures dealing in a humorous manner with the sports involved, which were distributed for profit in numerous moving picture theatres. This, we said, was a use for purposes of trade. Similarly, in the *Binns* case, we held that one acclaimed as a hero for his feats in connection with a rescue at sea was entitled to protection against fictionalization of his exploit, and the use of his name and personality for mere commercial, as distinguished from news, purposes. Again, in the *Sutton* case, although the story of a woman who was bequeathed one perfect rose a week by a secret admirer was newsworthy, the defendant was held liable because the story as presented to the reader was so embellished in the telling that it was no longer a factual report of the events which actually took place. In the *Blumenthal* case, a motion picture company filmed a picture purporting to portray picturesque parts of the city of New York, which it sold, distributed and displayed for trade purposes to local motion picture theatres. Included, however, was a closeup, full-sized picture of plaintiff vending bread and rolls on the street, shown for a period of some six seconds.

The *Blumenthal* case (*supra*) illustrates the area of privacy which may not be invaded even in this modern era of television. One traveling upon the public highway may expect to be televised, but only as an incidental part of the general scene. So, one attending a public event such as a professional football game may expect to be televised in the status in which he attends. If a mere spectator, he may be taken as part of the general audience, but may not be picked out of a crowd alone, thrust upon the screen and unduly featured for public view. Where, however, one is a public personage, an actual participant in a public event, or where some newsworthy incident affecting him is taking place, the right of privacy is not absolute, but limited. Here plaintiff, unlike Mrs. Blumenthal, consented to perform before 35,000 spectators in a professional football game that had wide and legitimate public interest. While not a part of the game proper, he did become a part of the spectacle as a whole by appearing between the halves, and voluntarily occupying the very center of attraction for several minutes. Under these circumstances, it can hardly be said that his right of privacy was invaded.

While plaintiff's contract with Pro-Football, Inc., providing that he be not televised, may well give rise to an action for breach of contract as between them, we hold here that any such breach of contract would not, of itself, also give rise to a cause of action under section 51 of the Civil Rights Law. Nor need we pause to consider what effect any other treatment would have had on plaintiff's rights under the statute (see, e.g., *Redmond* v. *Columbia Pictures Corp., supra; Franklin* v. *Columbia Pictures Corp., supra*). In the circumstances here present, he was not shown for purposes of trade, within the meaning of the statute.

The judgment of the Appellate Division should be affirmed, with costs.

DESMOND, J. (concurring). I concur for affirmance, but for reasons differing somewhat from those stated in Judge FROESSEL's able and comprehensive opinion. It seems to me that the televising of plaintiff's act was, in undisputable fact, a use thereof " for advertising purposes ", without plaintiff's consent. The performance of plaintiff's trained animals became part of a long televised show sponsored by, and advertising the product of, a manufacturer of cigarettes. But that does not end this case. My difficulty is that there was no invasion of any " right of privacy ". Plaintiff, a professional entertainer, gave his show before a vast audience in an athletic stadium. His grievance here is not the invasion of his " privacy " — privacy is the one thing he did not want, or need, in his occupation. His real complaint, and perhaps a justified one, but one we cannot redress in this suit brought under the New York " Right of Privacy " statutes, is that he was not paid for the telecasting of his show. The decision (*Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538) that led to the enactment of article 5 of the Civil Rights Law, the language of that article itself, and a long series of construing decisions (many of them mentioned in Judge FROESSEL's opinion), all show that the intent of the " Privacy " statutes was to forbid and punish the exploitation, for gain, of a man's individual personality, that is, invasions of his right to be let alone. Enacted to fill a gap in existing law, article 5 should not be held to apply to a violation of a contract right to be compensated for public or semipublic theatrical, or similar, exhibitions. In no real sense was plaintiff's " privacy "

infringed upon. These statutes have always been narrowly construed, and what plaintiff is asking for is the broadest kind of application.

LEWIS, CONWAY and DYE, JJ., concur with FROESSEL, J.; DESMOND, J., concurs for affirmance in separate opinion: LOUGHRAN, Ch. J., and FULD, J., dissent.

Judgment affirmed.