SHIRLEY BOOTH, Respondent, *v.* CURTIS PUBLISHING COMPANY et al., Appellants.

First Department, January 30, 1962.

*Harold R. Medina, Jr.,* of counsel (*Thomas D. Kent* with him on the brief; *Cravath, Swaine & Moore,* attorneys), for appellants.

*George G. Gallantz* of counsel (*Colton, Gallantz & Fernbach,* attorneys), for respondent.

BREITEL, J.   Plaintiff, a well-known actress in the theatre, motion pictures, and television, recovered a damage award of $17,500, after a jury trial, for invasion of her right of privacy in violation of sections 50 and 51 of the Civil Rights Law. Defendant Curtis, publisher of a number of widely circulated magazines, and its advertising agency, have appealed. They argue that there was no breach of privacy and, in any event, no damage, compensable or subject to punitive or exemplary evaluation.   The jury's award consisted of a finding of $5,000 in compensatory damages and $12,500 by way of exemplary damages.

The question is whether a person's photograph originally published in one issue of a periodical as a newsworthy subject (and, therefore, concededly exempt from the statutory prohibitions) may be republished subsequently in another medium as an advertisement for the periodical itself, illustrating the quality and content of the periodical, without the person's written consent.   The question is substantially one of first impression although there are at least two leading precedents which significantly project the statute's relation to the facts at bar.

For the reasons to follow the judgment and verdict in favor of plaintiff should be reversed, as a matter of law, and the complaint dismissed.

Section 51 of the Civil Rights Law, in pertinent part, reads as follows:   "Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use

thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages."*

The statute has a distinguished origin and was a significant correction of a hiatus at the common law which provided no remedy for the commercial exploitation by another of one's personal identity and qualities (*Flores* v. *Mosler Safe Co.*, 7 N Y 2d 276, 280; *Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538). Nevertheless, the language of the statute, since its enactment in 1903, has required and received delicate judicial elaboration in the area where the reproduction of names and photographs properly published for news or public interest purposes has also served to sell and advertise the medium in which they were contained (e.g., *Humiston* v. *Universal Film Mfg. Co.*, 189 App. Div. 467; *Oma* v. *Hillman Periodicals*, 281 App. Div. 240; *Dallesandro* v. *Holt & Co.*, 4 A D 2d 470).

The facts here are:

Miss Booth was vacationing at a prominent resort called "Round Hill" in Jamaica, in the British West Indies. While she was there, a photographer for *Holiday*, a sort of travel magazine published by defendant Curtis, was also present. He was engaged in taking photographs for use in an article to appear in *Holiday* concerning Round Hill and its guests. Along with other prominent guests Miss Booth was photographed, to her knowledge and without her objection. Miss Booth never gave a written consent to publication. One of the color photographs, a very striking one, shows Miss Booth in the water up

---

* Expressly exempted from the statute are certain incidental uses as provided in the balance of the statute not quoted above: "But nothing contained in this act shall be so construed as to prevent any person, firm or corporation, practicing the profession of photography, from exhibiting in or about his or its establishment specimens of the work of such establishment, unless the same is continued by such person, firm or corporation after written notice objecting thereto has been given by the person portrayed; and nothing contained in this act shall be so construed as to prevent any person, firm or corporation from using the name, portrait or picture of any manufacturer or dealer in connection with the goods, wares and merchandise manufactured, produced or dealt in by him which he has sold or disposed of with such name, portrait or picture used in connection therewith; or from using the name, portrait or picture of any author, composer or artist in connection with his literary, musical or artistic productions which he has sold or disposed of with such name, portrait or picture used in connection therewith." As will be seen from cases later discussed, the courts from the beginning have exempted uses incidental to news dissemination, while the statutory exemptions are confined to specified nonnews incidental uses.

to her neck, but wearing a brimmed, high-crowned, street hat of straw. This is the particular photograph the subsequent reproduction of which becomes the gravamen of the lawsuit.

The photographs were taken in the Winter of 1957–1958. In February, 1959 the article and a selection from the January, 1958 photographs appeared in the magazine. Given prominent place and size was the described photograph of Miss Booth.

Concededly, the publication in *Holiday* was not a violation of Miss Booth's right of privacy, for this was reproduction for news purposes as the phrase had been used in applying the statute.* However, in June, 1959 defendants caused to be published the same photograph in prominent full-page advertisements of *Holiday,* in the *New Yorker* magazine and *Advertising Age.* The first is a magazine of general circulation and *Advertising Age* is a trade periodical. Both advertisements expressly presented Miss Booth's photograph as a sample of the contents of *Holiday* magazine. Because of the photograph's striking qualities it would be quite effective in drawing attention to the advertisements; but it was also a sample of magazine content.**

It is this June, 1959 publication for advertising purposes in the magazines of others which plaintiff has thus far successfully argued is a violation of the statute, within its literal as well as its purposive content. Defendants, on the other hand, argue that the republication is no more than a necessary and logical extension of the privileged or exempt publication of news content. They point out that news dissemination (the object, of course, of news publication) is not possible without sale and distribution of the medium, and that the sale and distribution of the medium are not possible without resort to revenue from advertising in the news medium itself. Agreeing that collateral advertising use of a person's name and identity is not permitted, defendants urge that use limited to establishing the news content

---

* Notably, in the context of the statute news purpose is largely determined by public interest rather than currency or unusualness of the event (see *Dallesandro* v. *Holt & Co.,* 4 A D 2d 470, *supra,* especially in the light of the dissenting opinion by Mr. Presiding Justice PECK). Thus, the court in the *Dallesandro* case said: " The test of permissible use is not the currency of the publication in which the picture appears but whether it is illustrative of a matter of legitimate public interest [citing cases] ". (p. 471). Perhaps, " news purpose " is not the apt phrase, but the terminology was developed in the cases, the earliest arising out of " news " uses. Today, it is evident that the concept embraces qualifiedly matters of public interest, inclusive of current news but also going considerably beyond that.

** Attached as an appendix is a complete description of the advertisement together with the full text of the advertising message.

and quality of the medium is not such collateral advertising as is conditionally forbidden by the statute. In short, defendants say they have a right to show their product, whether by displaying a February, 1959 copy of the magazine or by reproducing pertinent parts in advertisements offering the advertising pages or the periodical itself to users.

As is often the case, the language of the applicable statute may be made to control the result depending upon how one concludes to verbalize the fact complex presented in the problem. Of course, such sterile reasoning should be avoided, if epithets are not to be substituted for analysis. Moreover, a statute, as with a decisional principle of law, should be applied as closely as possible to the operative facts, viewed realistically in the stream of events, giving effect to the purpose as well as the language of the statute. With such a functional approach the leading precedents may provide significant guidance.

In *Humiston* v. *Universal Film Mfg. Co.* (189 App. Div. 467, *supra*) the principle was laid down that the news disseminator was entitled to display extracts for purposes of attracting users and selling its product. There, the makers of newsreels for motion picture projection had reproduced plaintiff's picture, as it appeared in the newsreels, in posters to advertise the exhibition. Emphasized by the court was the determination that the statute was not intended to and did not limit the legitimate activities of news disseminators, even though news dissemination may be an activity for profit. The advertising, which it was unquestionably, was held to be incidental to the exhibition of the film itself.

The *Humiston* case, then, stands for recognition of a privileged or exempt incidental advertising use by a news disseminator of a person's name or identity which does not fall afoul of the statutory prohibitions. The principle has been followed since with respect to periodicals and books purveying matter of public interest (e.g., *Dallesandro* v. *Holt & Co.*, 4 A D 2d 470, *supra*; *Oma* v. *Hillman Periodicals*, 281 App. Div. 240, *supra*; *Wallach* v. *Bacharach*, 192 Misc. 979, affd. 274 App. Div. 919; *Koussevitzky* v. *Allen, Towne & Heath*, 188 Misc 479, 485 [SHIENTAG, J.], affd. 272 App. Div. 759; cf., *Sidis* v. *F-R Pub. Corp.*, 113 F. 2d 806, 810, cert. denied 311 U. S. 711).

More recently, the Court of Appeals has had occasion to delimit the other extreme of collateral rather than incidental advertising of news items affecting a person's right of privacy. In *Flores* v. *Mosler Safe Co.* (7 N Y 2d 276, *supra*) it was held a statutory violation for a safe manufacturer to publish, in its commercial advertising, a total reproduction of a news article

concerning plaintiff which appeared in an independent news medium, to illustrate the loss of valuable business records in the event of fire. The problem was described as follows: "There can be no doubt but that the circular, taken in its entirety, was distributed as a solicitation for patronage. The question before us, then, is whether the manner in which plaintiff's name was used therein comes within the prohibition of the statute as a use for advertising purposes. Defendant predicates its appeal on the theory that the use of plaintiff's name was merely an incidental mentioning of his name in a news report, that it was completely unrelated to the advertiser's products although in physical juxtaposition to the advertising matter, and that such a use of an individual's name does not constitute a violation of the statutory prohibition." (pp. 279–280). Thereafter, in holding that plaintiff was entitled to recover, the court stressed two reasons: first, that the reproduced item was no longer current or newsworthy; and, second, that the reproduced matter was related in the commercial advertising to defendant's product, although never so related in the public medium in which the reproduced matter had first appeared.

Thus, in the *Flores* case, the court stressed the nonnews purpose of the advertising both as to the timing and the sponsor of republication. While the distinctions might be superficially applied to this case, they are not relevant because there the republication was by a safe manufacturer for its own trade purposes — a classic collateral use. Indeed, in analyzing the cases, Chief Judge CONWAY, in the *Flores* case, repeatedly stressed that uses incidental to the dissemination of news are not violative of the statute (*ibid.* pp. 281–283). It is true too, of course, that subsequent reproduction for sale was repeatedly distinguished from the original production in the news medium, but the Chief Judge was discussing the sale of a completely unconnected product rather than the sale of the news medium. Thus, the distinction required no qualification in the *Flores* case, as it might in a case, such as this, involving promotion of the news medium. Indeed, the qualification with respect to advertising the news medium itself is still relevant and in full force, as it was in the *Humiston* case (*supra*) and in the many cases in its wake, only some of which are cited above.

It thus appears that what has been described as collateral advertising may invoke the statute's penalties, if the other conditions are present, and, on the other hand, that so-called incidental advertising related to the sale and dissemination of the news medium itself may not. In holdings under the statute, it has been the rule that contemporaneous or proximate adver-

tising of the news medium, by way of extract, cover, dust jacket, or poster, using relevant but otherwise personal matter, does not violate the statute. The question here is whether the incidental has passed into the collateral because of the subsequent reproduction for purposes of solicitation in the pages of other media.

Looking also to the policy of the statute, the vital necessity for preserving a strong and free press, and considering the practical objections to imposing too fine a line of demarcation in an inherently fluid continuum, it is concluded that the reproductions here were not collateral but still incidental advertising not conditionally prohibited by the statute.

It stands to reason that a publication can best prove its worth and illustrate its content by submission of complete copies of or extraction from past editions. Nor would it suffice to show stability of quality merely to utilize for that purpose a current issue. Moreover, the widespread usage over the years of reproducing extracts from the covers and internal pages of out-of-issue periodicals of personal matter relating to all sorts of news figures, of public or private stature, is ample recognition that the usage has not violated the sensibilities of the community or the purport of the statute.*

Emphasizing the practical limitations is the consideration that none would or does contradict the right of the publisher to display whole copies of past issues to solicit circulation or advertising. And, of course, it is true that the publisher must advertise in other public media, just as it must by poster, circular, cover, or soliciting letter. This is a practical necessity which the law may not ignore in giving effect to the purposes of the statute.

To be sure, *Holiday's* subsequent republication of Miss Booth's picture was, in motivation, sheer advertising and solicitation. This alone is not determinative of the question so long as the law accords an exempt status to incidental advertising of the news medium itself. The exemption extends to the republication because it was illustrative of magazine quality and content, even though, realistically, it is recognized that the

---

* Marked for identification, but not received in evidence in this case, were advertising formats for nationally known magazines, in which covers of and extracts from earlier issues were reproduced together in miniature. Included were the names and portraits of public figures, and even private figures momentarily in the news, all illustrating the quality and content of the periodicals over many years. Moreover, it is a matter of common experience that such and similar advertising formats are used repeatedly with effectiveness, without having incurred public complaint or legislative or judical obstruction.

republication also served another advertising purpose, that is, initially attracting the reader to the advertisement. So, in the *Holiday* advertisement, the reader's attention is undoubtedly first captured by the striking photograph, although the reader is soon led to the more serious business of purchasing the magazine or buying advertising space in its pages.

This case would not be the first in which the juxtaposition of the noteworthy and advertising has resulted in a permitted use. Thus, in *Gautier* v. *Pro-Football* (304 N. Y. 354) the performer who provided entertainment between the halves of a professional football game served to retain the attention of television viewers of the game, although commercial advertising intervals were strategically inserted to capitalize upon the viewers' interest. In that case, in a wholly different set of circumstances and in light of vastly different considerations it was also held that the plaintiff's privacy was not unlawfully invaded. The case nevertheless serves to illustrate that merely the juxtaposition of a person's likeness with a frankly commercial presentation is not determinative. And this is so, even though the advertiser may deliberately arrange the juxtaposition to take advantage of the potential customer's interest in the noncommercial facet of the scene. To the same effect, see *Wallach* v. *Bacharach* (192 Misc. 979, affd. 274 App. Div. 919, *supra*) in which a news item was purposely placed in physical juxtaposition to a paid advertisement in order to attract readers to the advertisement.

Consequently, it suffices here that so long as the reproduction was used to illustrate the quality and content of the periodical in which it originally appeared, the statute was not violated, albeit the reproduction appeared in other media for purposes of advertising the periodical. In so viewing the case, essential to the holding is that there was nothing in the reproduction which suggested (although plaintiff has tried to make argument to such effect) or could reasonably suggest that Miss Booth had indorsed the magazine, defendant Curtis' product. On the other hand, whether one might have inferred that Miss Booth was paid for permitting the photograph to be used is not material, any more than such inference would have been material in considering the first publication in the February, 1959 issue, as exempted from the statute. Of course, if perchance such inference of payment were derogatory in effect, there might be a different case and a different cause of action not based on the statute.

The trial court, in an especially clear and well-articulated charge instructed the jury that a contemporaneous poster adver-

tising the current issue and using Miss Booth's photograph would be a permitted use. It put to the jury the question, as one of fact, whether the republication several months later was an independent and separate use of Miss Booth's photograph for defendant's own advertising purposes. If it was, the jury was instructed, there was a violation of the statute. The question, then, was whether or not the subsequent republication was reasonably related to the original use of the photograph in the February, 1959 issue of *Holiday*. On the conclusions reached here the submission was not correct because it disregarded the purpose served in a publisher presenting to its potential customers illustrative samples of the quality and content of its publication. This, then, is the point at which there is significant departure from the position taken by the trial court.

On the conclusions reached it is not necessary to consider other questions raised by defendants, namely, the alleged excessiveness of damages awarded and whether plaintiff was entitled to receive exemplary in addition to compensatory damages. Also, it is not necessary to consider whether defendants were entitled to rely on legal advice received as negativing willfulness of the alleged violation. Nor does one reach the question whether because of plaintiff's avowed seeking of publicity in connection with her theatrical profession she suffered no or only nominal damages as a result of the reproduction in advertising of her photograph and name.

On the other hand, defendants' contention that a public figure has no right of privacy is rejected. Such contention confuses the fact that projection into the public arena may make for newsworthiness of one's activities, and all the hazards of publicity thus entailed, with the quite different and independent right to have one's personality, even if newsworthy, free from commercial exploitation at the hands of another (see *Gautier* v. *Pro-Football*, 304 N. Y. 354, 359, *supra*; *Binns* v. *Vitagraph Co.*, 210 N. Y. 51; *Oma* v. *Hillman Periodicals*, 281 App. Div. 240, *supra*; *Dallesandro* v. *Holt & Co.*, 4 A D 2d 470, *supra*.) * Defendants' contention is all the more unreasonable when one contemplates the occasions in which persons are projected into the public arena, that is, into the news, through no volitional

---

* The confusion is no doubt engendered by the common use of the "privacy" nomenclature under the statute, and because of the statute's historical origins. Actually, the statute does not purport to protect all privacy, of which a public figure has preciously little, but, rather, against commercial exploitation without written consent, to which a public figure is perhaps even more subject than a nonpublic person. Thus, a public figure has a definite, albeit a more limited right of privacy.

choice and sometimes only by mischance or grave misfortune. Most assuredly, then, Miss Booth has a right of privacy, although it does not protect her from true and fair presentation in the news or from incidental advertising of the news medium in which she was properly and fairly presented. That she may have voluntarily on occasion surrendered her privacy, for a price or gratuitously, does not forever forfeit for anyone's commercial profit so much of her privacy as she has not relinquished.

Further comment by way of *caveat* is merited on the distinction between collateral and incidental advertising. In this case it is easy enough to determine that the reproduction of the February, 1959 photograph in the June, 1959 advertisements was an incidental and therefore exempt use. Hence, the determination is made as a matter of law. It may well be that a news or periodical publisher is doing more than selling a news medium. Or it may be that there is an issue whether there is involved a genuine news medium. Then a question of fact may be raised whether the advertising is incidental to the dissemination of news. Or it may become clear enough, even as a matter of law, that the use was collateral and only ill-disguised as the advertising of a news medium. The short of it is that the mere affixing of labels or the facile verbalization of the facts will not determine the applicable rule. The more rigorous task of analysis, searching the protections surrounding the dissemination of news, must be undertaken before the otherwise inviolable right of privacy is found to be absent. In such a search the determination of whether the advertising is incidental or collateral will conclude the analysis rather than be the question-begging starting point.

Accordingly, the judgment in favor of plaintiff should be reversed on the law, the verdict vacated, and the complaint dismissed, all without costs to any party.

### APPENDIX

The advertisements complained of consisted of Miss Booth's picture, occupying all but the lower quarter of the page, a small reproduction of a *Holiday* cover in the lower right-hand corner (not the cover of the issue in which Miss Booth's picture first appeared), and an advertising message to the left of the reproduction. Immediately beneath Miss Booth's picture and to the right is a caption, in very small italic type, stating " Shirley Booth and chapeau, from a recent issue of Holiday ". The text, appearing in two columns to the left of the cover reproduction, is as follows:

" YOU'RE UP TO YOUR EARS IN OPULENCE

" Holiday wades right in at Jamaica's Round Hill colony for a close-up look at how the other half of one per cent lives it up. The company is entertaining; the mood is delightfully intimate. Slim Aaron's perceptive camera captures these elusive spirits in mid-flight.

" This is rich, it's Holiday, it's wonderful. With Holiday's highly personal viewpoint — expressed in a creative blend of words and pictures — the exotic names, places and pleasures become familiar, the familiar becomes freshly exciting.

" It's exhilarating to Holiday readers — some 875,000 high-income families who are just naturally goers, doers, buyers, trend starters. Holiday whets their appetites for more of the good things in life, puts them in an expensive Holiday mood.

" What a provocative selling opportunity for advertisers!

" *There's a rewarding new world for you in* HOLIDAY."

EAGER, J. (dissenting). I am constrained by the plain and unambiguous terms of the statute (Civil Rights Law, § 51) to dissent from the holding of the majority. Furthermore, I believe that the decision of *Flores* v. *Mosler Safe Co.* (7 N Y 2d 276) is controlling and clearly supports the judgment for the plaintiff here.

" [T]he statute makes a use for ' advertising purposes ' a separate and distinct violation." (*Flores* v. *Mosler Safe Co., supra,* p. 284.) It confers upon every individual the right " to control the use of his name or portrait by others so far as advertising or trade purposes are concerned. This right of control in the person whose name or picture is sought to be used for such purposes is not limited by statute." (*Binns* v. *Vitagraph Co.,* 210 N. Y. 51, 55.)

By virtue of the terms of the statute the use without plaintiff's consent of her name and picture by the defendants for advertising purposes entitled her to " sue and recover damages for any injuries sustained by reason of such use ". There is no expressed limitation applicable here restricting such right. Thus, it seems to me, that the conferring of an exempt status upon this type of advertising solicitation in behalf of a magazine or periodical publisher is to judically interpolate an exception not written into the statute. This we may not do. Nor should we reach out to construe this statute " narrowly " or apply its commands " grudgingly " (*Lahiri* v. *Daily Mirror,* 162 Misc. 776, 779). We should construe and apply it liberally, for " the purpose of the statute is remedial and rooted in popular resentment at the refusal of the courts to grant recognition to

the newly expounded right of an individual to be immune from commercial exploitation '' (*Flores* v. *Mosler Safe Co., supra,* pp. 280–281).

In fact, to hold that this area of public name commercialization is to be immunized from the application of the statute not only infringes upon the language thereof but tends to frustrate the very purpose of the statute, which '' was born of the need to protect the individual from selfish, commercial exploitation of his personality '' (*Goelet* v. *Confidential, Inc.,* 5 A D 2d 226, 228).

In sheer simplification of the problem, we may look at it this way. Would the defendants, upon the taking of the particular picture of plaintiff and without a writing of the article in *Holiday* magazine, have been entitled to use, without her consent, the picture with her name for advertising purposes? Clearly, the answer would be NO. And, most certainly, the publication of the article in *Holiday* magazine did not confer upon the defendants a general right to subsequently take therefrom and use plaintiff's name and picture out of context as an aid to future sales and advertising campaigns. The defendants did not thereby gain a license to thereafter cash in on the plaintiff's popularity for the purpose of promoting the over-all business of the magazine enterprise.

The permissibility of the use of plaintiff's name or picture, originally in the article or thereafter, depended upon the purpose and nature of the use. Material from the article, though no longer current, including the plaintiff's name and picture, could be republished in connection with any informative presentation of a matter of public interest. (See *Molony* v. *Boy Comics Publishers,* 277 App. Div. 166, 170; *Dallesandro* v. *Holt & Co.,* 4 A D 2d 470, 471.) A use as a presentation of a matter of news or of legitimate public interest would be privileged (see *Binns* v. *Vitagraph Co., supra,* p. 56), and liberality in allowing such use is called for in the interest of speech and press freedom. On the other hand, a use for advertising purposes would be expressly prohibited by the statute, and neither the Constitution nor public interest requires that the statutory proscription be circumscribed to serve a private pecuniary interest.

In any event, it has been clearly laid down that the news or informative presentation privilege '' does not extend to commercialization '' of a newsworthy figure's personality '' through a form of treatment distinct from the dissemination of news or information '' (*Gautier* v. *Pro-Football,* 304 N. Y. 354, 359). And, on the undisputed facts, the particular use here by defendants some months after the original publication, of plaintiff's

name and picture, was not in any sense the dissemination of news or a public interest presentation, nor was it merely incidental to such dissemination or presentation. The advertising was not so intended. The conceded purpose of the re-use of plaintiff's picture, with her name, was not to advertise the *Holiday* magazine as a news medium. The defendants were not pointing to the quality or content of the particular issue or of the magazine *Holiday* generally for the purpose of selling it or future issues as news media. As a matter of fact, theirs was a calculated use to solicit the patronage and the business of advertisers. As stated in the wording of the ad, the defendants were urging the magazine as a " selling opportunity for advertisers "; and, to carry out such purpose, there was an insertion of the advertisement with plaintiff's picture and name in a strictly trade magazine, to wit, the *Advertising Age*. Thus, as stated in the majority opinion there was here " in motivation, sheer advertising and solicitation ". This was " a deliberate later publication of a no longer current news item in an individual firm's advertising literature ". (*Flores* v. *Mosler Safe Co., supra,* p. 282.) This was a use " in, or as part of, an advertisement or solicitation for patronage ". (*Flores* v. *Mosler Safe Co., supra,* p. 284.) Such a use is specifically proscribed by the terms of the statute and it is immaterial that there was nothing in the advertisement to imply plaintiff's indorsement of the magazine (*Flores* v. *Mosler Safe Co., supra,* pp. 283, 284).

Of course, in a particular case, it may be a question of fact as to whether or not a defendant's re-use of a person's picture and name taken from context of a prior newsworthy article is a deliberate and intentional use for collateral advertising purposes rather than merely incidental to news dissemination. Here, however, defendants' motivation was clear, as admittedly, they sought not to stimulate the circulation of the news medium but to sell advertising therein. In any event, if there was a question of fact, the judgment should stand because this question was resolved against the defendants by the unanimous determination of the jury that the particular advertisement was a separate and independent use by the defendants for their own advertising purposes.

Finally, in my opinion, the holding of the majority authorizes a publisher to boot-strap himself into a position whereby he can exploit the personalities of famous name individuals solely for the commercial interests of his publication and without regard to such incidental harm as may come to the individuals. This would defeat the very purpose of the statute and is contrary to the trend of the decisions in that it would leave without a remedy

a person who may be substantially injured by this type of advertising. One, without difficulty, can readily visualize that, upon a change occurring in personal circumstances, and depending upon the time, place and manner of the republication, a person, and particularly a public figure, could be severely injured in his reputation and feelings by the allowance of such commercial exploitation of his name and picture. The statute gives a right of action for such exploitation, and, in my opinion, there is nothing policywise requiring the courts to limit the plain effect of the statute.

In this case, it may be that the plaintiff was not substantially damaged. It may be that the circumstances are such that punitive damages are not in order. But, in view of the position of the majority, this is immaterial and I have not considered this feature.

BOTEIN, P. J., VALENTE and STEVENS, JJ., concur with BREITEL, J.; EAGER, J. dissents in opinion.

Judgment reversed, on the law, the verdict vacated, and the complaint dismissed, without costs. Appeal from order entered on June 19, 1961 dismissed as academic.