PATRICIA C. REILLY et al., Appellants, v RAPPERSWILL CORPORATION, Respondent.

First Department, December 30, 1975

*Michael Miller* of counsel *(Landay & Miller,* attorneys), for appellants.

*David Greene* of counsel *(Martin Lichter* with him on the brief; *Aberman, Greene & Locker,* attorneys), for respondent.

MURPHY, J. The instant case presents, once again, the

troublesome problem of balancing a public figure's right of privacy against constitutionally protected First Amendment rights.

Plaintiffs are television broadcast journalists who regularly appear on the WCBS-TV 11 o'clock P.M. news program. In March, 1974, plaintiff "Trish" Reilly was assigned to cover a story for her employer relating to the "energy crisis", a matter of then (and continuing) current interest. She was given a *New York Times* article about defendant's product "Rapco Foam", an insulation product injected into buildings.

After consulting with defendant, Ms. Reilly filmed her report at two locations in New Jersey, prepared it for broadcast and presented it on the 11 P.M. program after a "lead-in" by a co-"anchorman", plaintiff Smith. At the end of the report Ms. Reilly turned to the other "anchorman", plaintiff Marash, who was then visible on the screen.

Defendant manufactures Rapco Foam. It commissioned the preparation of a demonstrational film entitled "Insulate Today For Comfort Tomorrow" which it sold to its distributors for resale to contractors to demonstrate to a potential customer, usually a homeowner, the use, properties and desirability of insulating foam.

The film runs for approximately 13 minutes and includes an excerpt of approximately 1½ minutes from the CBS newscast. The names and/or images of plaintiffs Reilly, Smith and Marash appear for approximately 30, 5 and 2 seconds, respectively. It is undisputed that neither plaintiffs nor CBS gave defendant consent, written or oral, to use plaintiffs' names or pictures.

Approximately one year after the broadcast Ms. Reilly claims she received a call from a named individual who told her he had seen an audio-visual "sales pitch" for Rapco Foam. Ms. Reilly informed her superior of such communication. A few months later Ms. Reilly alleges she received a call from an unnamed woman in New York City complaining of her "indorsement" of the assertedly "highly unsatisfactory" installation of this product. Plaintiff Reilly then called defendant and demanded that it cease and desist from using her name, photograph and story in connection with the promotion of Rapco Foam.

After receiving the telephone call from Ms. Reilly and prior to the institution of this action, defendant decided it would no longer distribute the demonstrational film in issue and began

preparation of a revised film omitting any reproduction of plaintiffs' names or likenesses. However, plaintiffs contend that defendant's contractors still use the original film to solicit patronage for Rapco Foam; and that at least 5 to 10 prints of the film were sold in New York State.

The instant action was then commenced pursuant to section 51 of the New York Civil Rights Law for violation by defendant of section 50 thereof. Simultaneously, a temporary injunction was sought. Special Term denied the same, in the exercise of discretion, on the grounds that there was "no showing of irreparable injury and the right to a permanent injunction is not without question." We disagree.

Section 50 of the Civil Rights Law provides, in general, that the use of the name, portrait or picture of any living person for advertising or trade purposes, without having first obtained the written consent of such person, is a misdemeanor. Section 51 of said law authorizes the maintenance of an action for equitable and legal relief by any party aggrieved by such unauthorized use.

Concededly, and despite the seemingly plain and unambiguous language of the statute, not every use for "advertising purposes, or for purposes of trade", is protected by our "Right of Privacy" law.

Thus, in *Booth v Curtis Pub. Co.* (15 AD2d 343, affd 11 NY2d 907), we upheld the right of a publisher to reproduce a prominent person's photograph, without such person's permission, in another medium in connection with an advertisement of the defendant's periodical as a permissible incidental use by a news disseminator. A similar exception was granted in favor of a book publisher. (See *Rand v Hearst Corp.,* 31 AD2d 406, affd 26 NY2d 806.)

The rationale for the judicially carved exception to the operation of the statute was to prevent any curtailment of "the right of free speech, or free press, or to shut off the publication of matters newsworthy or of public interest, or to prevent comment on matters in which the public has an interest or the right to be informed." *(Rand v Hearst Corp., supra,* p 409.)

No privilege exists, however, where, as here, there has been a blatant "selfish, commercial exploitation" of plaintiffs' names and pictures. *(Gautier v Pro-Football, Inc.,* 304 NY 354, 358.) Defendant is not a news or periodical or book publisher; and no issue is presented involving a genuine news medium.

The underlying facts in this case are more analogous to *Flores v Mosler Safe Co.* (7 NY2d 276) than the *Booth* and *Rand* cases *(supra)*. While it is true that in *Flores* the Court of Appeals stressed the factors that the later publication involved an item no longer deemed newsworthy and related to a matter not originally connected in the news medium with defendant's product—both of which are absent here—we nevertheless hold such distinction to be without legal significance. Both cases involve classic collateral—as distinguished from incidental—advertising and fall within the ambit of the statute's protection.

And, finally, defendant's contention that plaintiffs have forfeited their right of privacy by becoming public figures has already been judicially rejected. "While one who is a public figure or is presently newsworthy may be the proper subject of news or informative presentation, the privilege does not extend to commercialization of his personality through a form of treatment distinct from the dissemination of news or information". *(Gautier v Pro-Football, Inc.,* 304 NY 354, 359, *supra;* see, also, *Booth v Curtis Pub. Co.,* 15 AD2d 343, 351, *supra.)*

Before concluding, we deem it appropriate to note that the same regard for retaining a free and uninhibited press, which affected our decisions in *Booth* and in *Rand,* requires our concern here.

Plaintiffs are members of the press exercising a constitutionally protected right for the public good. The free exchange of information and ideas is essential to the continuance of our chosen form of government. To be effective, a news reporter must maintain an image of absolute integrity and impartiality. The commercial exploitation of an impartial report by use of a video tape or other reproduction of the name or picture of such reporter, for advertising or trade purposes, will not only tarnish the reporter's reputation for objectivity, but will have a chilling effect on reporters now involved in a field of expanding concern—consumer protection.

Accordingly, the order of Supreme Court, New York County (HUGHES, J), entered October 10, 1975, denying plaintiffs' motion for a preliminary injunction, should be reversed, on the law and in the exercise of discretion, and said motion, limited to defendant's activities in the State of New York (see *Rosemont Enterprises v Hughes,* 42 AD2d 544), should be granted, with costs.

Settle order on notice.

MARKEWICH, J. P., CAPOZZOLI, LANE and NUNEZ, JJ., concur.

Order, Supreme Court, New York County, entered October 10, 1975, unanimously reversed, on the law and in the exercise of discretion, and motion, limited to defendant's activities in the State of New York (see *Rosemont Enterprises v Hughes,* 42 AD2d 544), granted. Appellants shall recover of respondent $40 costs and disbursements of this appeal.

Settle order on notice.