KEEP THOMSON GOVERNOR COMMITTEE, Peter Thomson, Chairman, Orford, New Hampshire

v.

CITIZENS FOR GALLEN COMMITTEE, Virginia Connors, Chairman, and Hugh Gallen.

Civ. No. 78–331.

United States District Court, D. New Hampshire.

Oct. 2, 1978.

958

W. Stephen Thayer, III, Manchester, N.H., for plaintiff.

Paul M. McEachern, Portsmouth, N.H., for defendants.

OPINION

DEVINE, District Judge.

For the second time in as many years, the New Hampshire State Motto, "Live Free or Die", spawns litigation in the federal court.[1]

Plaintiff, "Keep Thomson Governor Committee", is a political committee that seeks the reelection of the incumbent Republican Governor.[2] Defendant, "Citizens for Gallen Committee", is also a political committee that seeks to advance the election of defendant Hugh Gallen, the duly nominated Democratic candidate for Governor. Jurisdiction is sought under 28 U.S.C. § 1338(a), (b),[3] plaintiff contending that the action involves violations of the copyright laws of the United States (17 U.S.C. §§ 101, et seq.) and unfair competition.

The complaint was filed on the morning of September 29, 1978, and on the afternoon thereof, at the request of the defendants, the Court held a hearing on whether plaintiff is entitled to injunctive relief. Both parties appeared by counsel, evidence was produced by the plaintiff, exhibits were introduced, and the Court heard oral arguments of counsel.

On or about August 8, 1978, Great American Music Machine, Inc., of Denver, Colorado (hereinafter "Great American") produced a musical composition consisting of lyrics and music that was entitled "Live Free or Die". Great American also manufactured a number of recordings of this song.

Plaintiff purchased all right, title, and interest in and to the song and recordings from Great American for the sum of $12,-000. The purchase price included some 2,500 copies of the recording, of which 2,000 have been sold at $3 per copy.[4] Initially, the record sold rapidly, but sales have now tapered off to 50 to 100 per week.

On September 27, 1978, Great American caused to be filed its applications for copy-

1. *Cf. Maynard v. Wooley,* 406 F.Supp. 1381 (D.N.H.1976 [Three-Judge Ct.]), *aff'd sub nom., Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

2. NH RSA 70:1(III) defines a "political committee" as meaning "any organization of two or more persons to influence elections or measures, including the political committee of a party . . . ."

3. 28 U.S.C. § 1338(a) grants to federal district courts original and exclusive jurisdiction of any civil action relative to copyrights; and

§ 1338(b) vests in the same courts original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright laws.

4. It has been stipulated that one side only of the recording is here at issue. That side contains a musical rendition of the song, and some narration hereinafter described. The reverse side of the record contains a political statement of the plaintiff's candidate, which the parties concede has no relevance to the case at bar.

rights on the song and recording in the United States Copyright Office. On the same date, Great American assigned to plaintiff (as of August 8, 1978) all of its right, title, and interest in and to any copyrights on said song and recordings thereof.

Plaintiff alleges that defendants have infringed its copyright by means of a political advertisement broadcast over various New Hampshire radio stations in support of the candidacy of defendant Gallen. Defendants deny any infringement, and will stipulate only that "a portion of their commercial is on our commercial".

Plaintiff concedes that defendants have not attempted to copy and offer the records for resale, but state that the defendants' political advertisement deprives them of the full use of a vital campaign tool; that such advertisement holds their candidate up to ridicule; and that it is "possible" that if the use of thereof is not enjoined, their candidate might be defeated in the election. Plaintiff has requested defendants to cease use of the political advertisement, and defendants have refused to do so.

The recordings at issue were played before the Court, and the Court has had the opportunity to replay same in the quiet of chambers. It is clear to the Court that the defendants' political advertisement is not a copy of the recorded song. As argued by defendants' counsel, it does include a portion of a political advertisement apparently made by or in behalf of plaintiff.

The plaintiff's recorded song runs about three minutes. The first 60 seconds thereof comprises the singing of the song by a musical group. This is interrupted by approximately 60 seconds of narration relative to the tradition and spirit of New Hampshire, and the record then concludes with another 60 seconds of the musical performance.

The defendants' recorded political advertisement runs about 60 seconds. At its commencement, the musical group can be heard singing the song. The apparently copied portion of the plaintiff's political advertisement runs about 15 seconds, and is followed by about 45 seconds of narration

outlining defendant Gallen's criticism of the program of plaintiff's candidate.

Defendants contend that the plaintiff "lacks standing" to sue, and that there is insufficient evidence of copyright registration to permit the plaintiff to proceed in this action. These claims are without merit.

■ The copyright statute (17 U.S.C. § 402) requires that sound recordings carry a notice, including a symbol (described as the letter "P" in a circle), the year of first publication thereof, and the name of ·the owner of copyright in the recording. Plaintiff's recorded song clearly complies with these regulations, and the evidence is also clear that plaintiff has properly deposited the copies of the records pursuant to 17 U.S.C. § 407. Plaintiff has for consideration paid received the proper assignment of the copyright registration, and is not barred by its status as a "political committee" in proceeding with this action.

■ The four most important factors to be considered in the awarding of injunctive relief are: (1) The significance of the threat of irreparable harm if the injunction is not granted; (2) the balance between this harm and the injury that granting an injunction would inflict on the defendant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest. 11 Wright & Miller, *Federal Practice and Procedure,* ¶ 2948, pp. 430, 431.

There is usually a presumption of irreparable damage once a prima facie case of infringement appears (*Wainwright Securities, Inc. v. Wall Street Transcript Corp.,* 558 F.2d 91 [2d Cir. 1977] cert denied, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759); here, however, the granting of injunctive relief would inflict far greater harm on the defendant than any harm suffered by the plaintiff.

In the context of this case, the Court must be aware that it operates in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitu-

tion. The First Amendment affords the broadest protection to such political expression in order to assure the unfettered interchange of ideas for the bringing about of political and social changes desired by the people. Although First Amendment protection is not confined to the exposition of ideas, there is practically universal agreement that the major purpose of that Amendment was to protect the free discussion of governmental affairs, including discussions of candidates. This is a reflection of our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, because the identities of those who are elected will inevitably shape the course that we follow as a nation. *Buckley v. Valeo,* 424 U.S. 1, 14–15, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). It does not appear that plaintiff has suffered or will suffer any monetary damage, and the mere "possibility" of loss of the election is outweighed by public interest in a full and free discussion of the issues relative to the election campaign.

The probability of success on the merits raises the issues of whether defendant has infringed plaintiff's copyright, and whether defendant has engaged in unfair competition by its advertisement.

A. Defendants contend that they have not infringed any copyright because the extent of their "copying" is sheltered by the "fair use" doctrine.

■ 17 U.S.C. § 106 grants to the owner of a copyright the exclusive right of reproduction and of the preparation of derivative works based on the copyrighted works, including sound recordings. However, 17 U.S.C. § 107 permits the "fair use" of a copyrighted work, including such use by reproduction, copies, or recordings for purposes such as criticism, comment, news reporting, teaching, scholarship, or research. Any such "fair use" is not an infringement. In determining whether there is a "fair use" the factors for consideration include:

(1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) The nature of the copyrighted work;

(3) The amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) The effect of the use upon the potential market for or value of copyrighted work.

As the Court has previously indicated, the defendants' advertisement is not a copy of the recorded song, but is a copy of a derivation thereof prepared and used by the plaintiff in its political advertisement. It is clearly established that advertisements are copyrightable (*Jacobs v. Robitaille,* 406 F.Supp. 1145, 1149 [D.N.H.1976]), and it is likewise clear that plaintiff had a perfect right to duplicate or prepare such a derivative work for use in its advertisement. 17 U.S.C. § 106, *supra.*

The defendants have copied some 15 seconds of the plaintiff's advertisement wherein the music of the recorded song can clearly be heard in the background; on its face, this constitutes an infringement. However, the exclusive right of a copyright holder must be weighed against the public's interest in dissemination of information affecting areas of universal concern (*Wainwright Securities, Inc. v. Wall Street Transcript Corp., supra;* *Meeropol v. Nizer,* 560 F.2d 1061 [2d Cir. 1977], *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756. Conflicts between interests protected by the First Amendment and the copyright laws can be resolved by application of the fair use doctrine. *Wainwright Securities, Inc. v. Wall Street Transcript Corp., supra* at 95.

■■ The line which must be drawn between fair use and copyright infringement depends on an examination of the facts in each case. *Tennessee Fabricating Co. v. Moultrie Mfg. Co.,* 421 F.2d 279 (5th Cir. 1970), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970); *Meeropol v. Nizer, supra* at 1068.

The first factor to be considered by the Court is the purpose and character of the use, including whether it is of a commercial nature or is for nonprofit educational purposes. The use by the defendant of a portion of the plaintiff's political advertisement is clearly part of a political campaign message, noncommercial in nature, and First Amendment issues of freedom of expression in a political campaign are clearly implicated.

The nature of the copyrighted work here demonstrates that the recording which defendant has partially copied is itself in part a political campaign message. The alleged infringement takes approximately 15 seconds from a total recording of three minutes in length, and it is clear to the Court that the effect of the use upon the potential market or value of the copyrighted work is nil. The recordings have sold and are continuing to sell without substantial commercial loss to the plaintiff.

Evaluating in concert the requisite factors set forth in 17 U.S.C. § 107 (*Williams & Wilkins Co. v. United States,* 487 F.2d 1345, 203 Ct.Cl. 74 [1973], *aff'd* 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 [1975]), the Court concludes that there is sufficient evidence upon which to base a determination that defendants' use of the plaintiff's political advertisement, derived from the copyrighted recording, constitutes "fair use", and thus did not infringe on the plaintiff's copyright.

B. As to "unfair competition", the New Hampshire statute (RSA 358–A:2) has as its gravamen the prevention of palming off, confusion, and deception. Actions under the statute may be guided by the interpretation and construction given to the Federal Trade Commission Act (15 U.S.C. § 45[a][1]), by the Federal Trade Commission and the federal courts. (RSA 358–A:13.) In one such interpretation, upheld in *Rodgers v. Federal Trade Commission,* 492 F.2d 228 (9th Cir. 1974), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60, the Federal Trade Commission ruled that " 'The proscriptions of Section 5 . . . are tailored for the business world, not for the political arena' ",

noting an ". . . overriding public interest in preservation of uninhibited communication in connection with political activity." Thus, the New Hampshire statute would not be applicable in the instant action.

Furthermore, under the common law misappropriation doctrine, plaintiff would be entitled to relief only upon a showing of commercial harm. *See Jacobs v. Robitaille, supra* at 1151–1152.

It is therefore highly unlikely that plaintiff will prevail on the merits.

For the reasons hereinabove set forth, the Court therefore finds and rules that the plaintiff is not entitled to either a temporary restraining order and/or preliminary injunction, and it is, therefore, ordered that said petitions for injunctive relief be, and they hereby are, denied.

SO ORDERED.