OPINION OF THE COURT
Shanley N. Egeth, J.
The instant motion, made jointly on behalf of both defendants, seeks a dismissal of the complaint, pursuant to CPLR *934 3211 (subd [a], par 7). Movants urge that the action is untenable in that the complaint fails to state a cause of action.
UNDERLYING FACTS
The complaint discloses that the plaintiff is presently in custody and awaiting trial pursuant to an indictment in which he is charged with the killing of two New York City policemen. The act complained of occurred during the 1978 New York State gubernatorial election campaign, in which the defendant Perry Duryea, was a candidate for Governor, and the other named defendant Bailey Deardourff & Associates, an advertising agency, served in an advisory capacity to the candidate.
The plaintiff charges the defendants with having "prepared, produced, distributed and repeatedly broadcast on major television networks in New York State * * * an advertisement promoting defendant Duryea’s candidacy which uses a picture of plaintiff” without "first obtaining the written or other consent of plaintiff”. According to the complaint, the broadcast advertisement noted that two policemen had been killed on a Brooklyn street during the past year, that the person accused of the slayings (the plaintiff) was "a former Attica rioter”, whom the incumbent Governor had pardoned despite "strong objections” made by his Special Prosecutor, and that Duryea, if elected, would "make our prisons more secure and toughen policies on pardons and paroles.” During the advertisement, the camera focused on a reproduction of a New York Daily News article reporting the pardon of the plaintiff, which contained a photograph of the plaintiff.
THEORY OF COMPLAINT
In essence, the complaint asserts that the plaintiff is entitled to injunctive relief and monetary damages because the defendants used the plaintiff’s photograph without his consent in a television political commercial; that such unauthorized use for advertising purposes was violative of the plaintiff’s right of privacy; and that such conduct is proscribed by sections 50 and 51 of the Civil Rights Law.
Although the pleading contains assertions that the televised use of the news story jeopardized the plaintiff’s due process rights to a fair trial, the single cause of action alleged in the complaint is predicated solely upon the plaintiff’s claim of *935 violation of the Civil Rights Law based upon an unauthorized use of his photograph for claimed advertising purposes. The additional allegations as to the effect of the charges upon a prospective trial relate only to the extent of entitlement to damages or injunctive relief rather than to any other underlying theory for a separate cause of action.
PRIOR JUDICIAL APPLICATION
In a decision dated November 2, 1978, Special Term (Gross-man, J.) denied the plaintiff’s application for a preliminary injunction to restrain further showing of the commercial. The court concluded that there was "no dispute that the text of the commercial in question is true and accurate and the plaintiff, who has thus become a public figure, whose name is in the news, has no right to object to his photograph being shown.”
The defendants contend that Justice Grossman’s decision constitutes "the law of the case” and thereby is dispositive of the entire proceeding. The plaintiff disputes this contention claiming that the prior decision "was based upon misapprehensions as to the law and facts applicable” to the action. As to this contention, this court need not decide that the prior determination is binding under the doctrine of law of the case. It concurs in the prior essential findings of fact based upon an independent determination made after its own evaluation of the submissions on this motion.
NOVEL ISSUE
Although considerable case law has developed in creating substantial definition of the scope and extent or restrictions in the application of sections 50 and 51 of the Civil Rights Law, to invasion of the right of privacy in uses for "advertising purposes, or for the purposes of trade,” no reported case appears to deal with the impact of the statute upon the political and electoral process. This case directly raises the issue in two aspects:
(1) Whether the particular unconsented use of the plaintiff’s photograph in a gubernatorial campaign can be deemed an advertising or trade purpose proscribed by the statute; or, in any event,
(2) Whether, in the balancing of constitutional rights, this particular use falls within the ambit of statutory proscription.
*936 STATUTE NOT APPLICABLE
This court determines that upon the facts of this case, the prohibitions of the statute clearly do not apply. The use of the plaintiff’s picture during the political campaign was not for the advertising or trade purposes within the statute’s intendment. Furthermore, in the balancing of rights and interests, the plaintiff’s claims of privacy right may not vitiate or abridge the paramount rights of society to information and necessary free expression in preparing for the exercise of the electoral franchise.
the statute: its origin and judicial definition
These statutory provisions were enacted in 1903 to create a privacy right barring unauthorized commercial exploitation of a person’s name or picture. One year before, the Court of Appeals held that there was no common-law privacy right which would grant redress to a young woman whose picture was used without consent on the label of a flour company’s box (Roberson v Rochester Folding Box Co., 171 NY 538).
This statute, clearly in derogation of the common law, must be interpreted consistent with its legislative intent and design to protect an individual against unauthorized "selfish, commercial exploitation” (Gautier v Pro-Football, 304 NY 354, 358). Generally, the decisions have rendered the statute applicable to unauthorized use of name or picture to sell a collateral commodity (Binns v Vitagraph Co. of Amer., 210 NY 51), where blatant commercial exploitation is found to exist (Reilly v Rapperswill Corp., 50 AD2d 342), or for solicitation of patronage for a particular service or product (Pagan v New York Herald Tribune, 32 AD2d 341 [relief denied against a newspaper printing a swimsuit advertisement]). It has also been held that some meaningful or purposeful commercial use is essential to an action under the sections (Moglen v Varsity Pajamas, 13 AD2d 114).
Consistent with this legislative intent, our courts have developed exceptions to narrowly construe the commercialism required for applicability of the statute in order to prevent any curtailment of "the right of free speech, or free press, or to shut off the publication of matters newsworthy or of public interest, or to prevent comment on matters in which the public has an interest or the right to be informed” (Rand v Hearst Corp., 31 AD2d 406, 409, affd 26 NY2d 806; Reilly v *937 Rapperswill, supra, p 344). It is now beyond dispute that the constitutional guarantees of freedom of speech and freedom of press have resulted in a liberal construction in defining those protected categories (such as: public person or figure; newsworthy person; matters of public interest or concern; or persons involved in or whose activities project them into such matters) against whom the statute may not afford recovery for invasion of privacy absent proof of knowledge of falsity or reckless disregard of truth (Time, Inc. v Hill, 385 US 374; Estate of Hemingway v Random House, 23 NY2d 341; Gautier v Pro-Football, supra; Rand v Hearst Corp., supra; Goelet v Confidential, Inc., 5 AD2d 226; Rosemont Enterprises v Random House, 58 Misc 2d 1, affd 32 AD2d 892).
POLITICAL CAMPAIGN ISSUE
It is crystal clear that a constitutionally protected or privileged use of a name or a picture does not extend to subsequent commercial exploitation of public persons or those engaged in a public activity via a type of treatment or use which is distinct from the dissemination of news or information. (Gautier v Pro-Football, supra; see Reilly v Rapperswill, supra.) The plaintiff contends that although the printing of the newspaper story in the Daily News was a concededly protected activity which did not give rise to a cause of action, the later reuse by the defendant of the newspaper clipping in a political television campaign commercial was no longer imbued with the character of privileged reporting of an event or activity of public interest, but rather constituted a crass exploitation for a commercial purpose. Plaintiff argues that a candidate’s quest for votes and resultant status or position is no less a proscribed commercialization than a vendor’s quest for trade customers, sales and resultant profits.
Plaintiff’s theory may capture or appeal to the imagination of some, particularly to cynical critics of our political system, but it is bereft of legal and societal validity.
In the continuing judicial effort to achieve a proper balance between the constitutional rights of the individual and those which are necessary for the preservation and welfare of society as a whole, it would appear to this court that the constitutional requisites of freedom of speech and freedom of the press become more imperative and irresistably compelling when those freedoms are relevantly exercised during the course of and as a part of the electoral process. No activity is *938 more basic to the maintenance of a democratic society than that which develops the knowledge, debate, and information necessary to enable our citizens to best exercise their electoral franchise, and thereby facilitate the election of leaders who will guide and shape the policies and programs of our institutions.
This basic proposition has been frequently postulated in decisions of the United States Supreme Court relating to freedom of speech and the press. It has been held that "speech concerning public affairs is more than self-expression; it is the essence of self-government” (Garrison v Louisiana, 379 US 64, 74-75); and that "[t]he maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means * * * is a fundamental principle of our constitutional system.” (Stromberg v California, 283 US 359, 369.)
Perhaps, the most lucid articulation of the necessity of subordinating inconvenience or injury sustained by private persons to the welfare of society during the exercise of suffrage is contained in the following language from Coleman v MacLennan (78 Kan 711), which was quoted by the United States Supreme Court in its leading decision in New York Times Co. v Sullivan (376 US 254, 281-282): " 'It is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages. The importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that they more than counterbalance the inconvenience of private persons whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great. The public benefit from the publicity is so great, and the chance of injury to private character so small, that such discussion must be privileged * * * This privilege extends to * * * matters of public concern, public men, and candidates for office.’ ”
In the case at bar, the newspaper account of the plaintiff’s arrest constituted a privileged report of an event of public interest and concern. His prior release from Attica prison and the controversy surrounding the act of an incumbent Governor in freeing this plaintiff projected the incident into an issue of even greater dimension and heightened public attention. The incident became a relevant central issue in a vigorously *939 contested campaign for the election of a Governor, the highest elected office in our State. In such context it attained a far greater significance than that which attached to the original incident. This plaintiff became a part of a major campaign issue involving our penal system and the treatment of crime and criminals. His story and history merged into the essential relevant area of privileged public discussion of the "matters of public concern, public men, and candidates for office” described by the Kansas Supreme Court (Coleman v MacLennan, supra, p 723). The constitutional privilege inhering to relevant campaign use of this story became far greater than that protecting the original news publication.
Once the plaintiff became a public personage involved in an event of public and electoral concern, his relationship to the incident became a proper subject for fair comment and public discussion by any candidate, supporter or commentator. The use of his name or picture in such pursuit could no longer be encompassed within the ambit of proscribed conduct as defined by sections 50 and 51 of the Civil Rights Law. Preparation or broadcasting of a television campaign advertisement utilizing the plaintiff's name and/or photograph could not and did not transform a constitutionally protected and favored airing of a vital issue of public electoral concern into a crass commercial exploitation. The defendant Duryea, as a candidate for Governor, or any political candidate, must be capable of discussing and attempting to document the validity of a position on a public election issue without fear of being subjected to warrantless suit. To impose a prior restraint or a potentially intimidating restriction upon a candidate’s legitimate right to comment upon a relevant campaign issue, is destructive of the essence of the freedom of positional or ideological exchange which is vital to the existence of a democratic electoral process.
In the course of a political campaign it is inconsequential and irrelevant whether the candidate uses privileged material or subject matter, while speaking in public, in formal debate, in campaign literature, a handbill, press release, as part of a mailing to voters, in a newspaper or magazine advertisement, or in a television commercial. The nature of the subject and use is significant and determinative; not the media or technique utilized.
This court cannot envision or conjure up any tenable circumstance which would strip a gubernatorial candidate of the *940 constitutional right to speak out upon a pertinent campaign issue, and in so doing, to refer to a relevant public personage by name or to use a reproduction of a news story containing a photograph. There is no way that a television commercial used in a political campaign for Governor can be construed to be a nonprivileged advertising or trade use encompassed within the ambit of proscription by the Civil Rights Law. A use of a photograph or public personage’s name in any appropriate form during a political campaign is a constitutionally protected activity, which is not a commercial trade advertising use within the jurisdictional compass of sections 50 and 51 of the Civil Rights Law.
DECISION
The complaint herein alleges no act upon the part of either defendant which is violative of sections 50 and 51 of the Civil Rights Law. The complaint therefore fails to state a cause of action. The motions to dismiss the complaint by each of the defendants are granted. Defendants may enter a judgment upon the merits, with costs.