OPINION OF THE COURT
Myriam J. Altman, J.
This motion was referred to me by order of Justice Riccobono and received on February 5, 1987. Defendant D. H. Sawyer & Associates, Ltd. (Sawyer) moves for summary judgment and defendant The Shapiro 85 Committee (Committee) joins in that motion.
Plaintiff James Dukas (Dukas) is a radio and television announcer. During the 1985 New Jersey gubernatorial campaign, Dukas was hired by Ailes Communications, Inc. (Ailes) *219 to narrate a television commercial for Governor Thomas Kean which highlighted the Governor’s environmental program. The Committee, a nonprofit organization which supported the candidacy of Governor Kean’s opponent, Peter Shapiro, engaged Sawyer as a political consultant. In response to the Kean commercial, Sawyer’s subsidiary produced a commercial challenging the Governor’s record on the environment. The Shapiro commercial commenced with a four-second segment taken from the Kean commercial in which the Governor appeared and plaintiff narrated: "Governor Tom Kean has launched the most aggressive environmental program”. Shapiro then appeared, pushed Kean’s image off the screen and enunciated his own plans to clean up toxic waste.
After the Shapiro commercial was aired, plaintiffs agent called Sawyer and demanded that the commercial be removed. Sawyer refused and the commercial continued to run for nearly two weeks.[1] Sawyer also received a complaint from Dukas’ union, the American Federation of Television and Radio Artists (AFTRA).
In this action plaintiff seeks to recover compensatory and punitive damages for the unauthorized use of his voice; he asserts claims grounded in conversation, unjust enrichment and interference with contractual relations. Defendants move for summary judgment on several grounds, the primary one being that their use of a segment of the Kean commercial is protected by the First Amendment of the US Constitution and section 8 of article I of the NY Constitution.
The protection of political expression is basic to the Federal and State guarantees of freedom of speech (Keep Thomson Governor Comm. v Citizens for Gallen Comm., 457 F Supp 957). "No activity is more basic to the maintenance of a democratic society than that which develops the knowledge, debate, and information necessary to enable our citizens to best exercise their electoral franchise, and thereby facilitate the election of leaders who will guide and shape the policies and programs of our institutions” (Davis v Duryea, 99 Misc 2d 933, 937-938).
The plaintiff no longer asserts a right to bar the broadcast of the Shapiro commercial, nor does he challenge defendants’ *220 right to comment on it. Rather, Dukas claims that his voice is a valuable property right and that the defendants’ unauthorized use thereof entitles him to damages.
Under the common law of copyright, an artist or performer who unconditionally contracted away his or her work retained no property interest in the subject matter (Pushman v New York Graphic Socy., 287 NY 302; see also, Bertolino v Italian Line, 414 F Supp 279). The gravamen of plaintiffs claim sounds in conversion, not common-law copyright infringement.[2] However, the basis of an action for conversion is the alleged violation of property rights (Sporn v MCA Records, 58 NY2d 482). It is therefore appropriate to examine the nature of plaintiffs property interest, if any, in the narration of the Kean commercial.
Dukas claims that his services as a narrator were performed in accordance with the provisions of an AFTRA contract. He cites several of those provisions to support his allegation that he retained a proprietary interest in the commercial. The contract limited the time during which the advertisement could be shown without payment of additional compensation to plaintiff to 13 weeks. According to Dukas, other provisions restricted the use of his voice to that particular commercial and barred the rerecording of his voice for any other commercial. As to the former, the right to additional payment does not necessarily implicate a property right in the subject matter. As to the latter, a reading of the "restrictions” provision (see, para 17 [b]) and the incompletely provided "limitations” clause (para 28) leaves their applicability to plaintiffs situation far from clear.[3]
*221 Defendants attach a provision of a standard AFTRA contract wherein the performer concedes that he or she has "no right, title or interest of any kind or nature whatsoever in or to the commercial” (para 5). It is thus unlikely that plaintiff retained any proprietary interest in the advertisement. To the extent that the provisions of the AFTRA contract may be somewhat conflicting, however, it cannot be said, as a matter of law, that Dukas retained no such interest.
Even assuming that plaintiff had some interest in the narration portion of the commercial, that right must yield to the very fundamental freedom-of-speech guarantees implicated under the circumstances here presented. Property rights must be balanced against the public’s interest in the "free discussion of governmental, affairs” (Keep Thomson Governor Comm. v Citizens for Gallen Comm., 457 F Supp 957, 960, supra). The minimal property right that Dukas may have had in the 4-second, 10-word segment is far outweighed by the public’s right to free and unfettered political debate.
Dukas voluntarily accepted employment as a narrator for a political advertisement. A gubernatorial race clearly presents matters of public concern for the citizens of New Jersey. His voice therefore became part of a statement subject to "fair comment and public discussion” (Davis v Duryea, 99 Misc 2d 933, 939, supra; see also, Gautier v Pro-Football, Inc., 304 NY 354).[4] It is now common for major portions of political campaigns to be fought by means of competing short commercials. It thus often becomes desirable, in order to focus attention on or to frame an issue, to quote from or utilize brief portions of an opponent’s commercial. It would undoubtedly be futile to seek the opponent’s permission for such utilization.
Here defendants elected to stimulate public discussion and to challenge Governor Kean’s environmental program by using a four-second segment of his commercial. They cannot constitutionally be inhibited in that choice. To permit plaintiff to pursue his claims would do so. Accordingly, the first, second, third and fourth causes of action are dismissed.
As to the fifth cause of action, the tort of interference with *222 contractual relations includes as an element an intent to harm without lawful excuse or justification. "[T]he interference must be intentional, not merely negligent or incidental to some other, lawful, purpose” (Alvord & Swift v Muller Constr. Co., 46 NY2d 276, 281). There is no evidence here of any intentional or unjustifiable interference with the contract between plaintiff and Ailes. It is clear that if any interference occurred it was merely incidental to defendants’ exercise of their constitutional rights. Their purpose was a legitimate, political one and did not involve an intent to interfere with plaintiff’s business relationships. Further, it is clear from plaintiff’s own deposition that he incurred no actual damages.
Accordingly, defendants’ motion for summary judgment is granted and the complaint is dismissed.

. The complaint refers to two Shapiro commercials. Apparently there was only one such commercial, but the words "Democrat for Governor” were added beneath Shapiro’s image shortly after the commercial began to run.

. In an analogous area, New York has given limited recognition to a right of publicity. "A public personality’s interest in his personality 'is closely analogous to the goals of patent and copyright law, focusing on the right of the individual to reap the reward of his endeavors’ ” (Delan v CBS, Inc., 91 AD2d 255, 262, citing Zacchini v Scripps-Howard Broadcasting Co., 433 US 562, 573). Dukas claims that after some 46 years in the business, his voice has become well known. A violation of the right of publicity involves misappropriation of a person’s proprietary interest in his or her identity for commercial exploitation (Brinkley v Casablancas, 80 AD2d 428; see also, Lombardo v Doyle, Dane & Bernbach, 58 AD2d 620). As with the right of privacy (Civil Rights Law §51), which is concededly not applicable here, plaintiff cannot claim a violation of his right of publicity because his voice was used for a public interest, not a commercial purpose (see, Rosemont Enters. v Urban Sys., 72 Misc 2d 788, mod on other grounds 42 AD2d 544).

. In a letter to Sawyer objecting to the use of the Kean segment, an AFTRA representative stated only that there "seemed” to be a violation of the "restrictions” and "limitations” clauses.

. In Judge Desmond’s concurring opinion in Gautier v Pro-Football, Inc. (304 NY 354), he suggests that Mr. Gautier might have had a viable claim for payment for his performance although the plaintiff had no right-to-privacy claim because he participated in a newsworthy event. The newsworthy event in Gautier was a football game, clearly a matter of strong public interest, but not involving the same constitutional considerations at issue here.