OPINION OF THE COURT
Richard F. Braun, J.
This is an action for injunctive relief and damages, pursuant to General Business Law § 397. Plaintiff moved for summary judgment as to liability against defendant and for a permanent injunction to prevent defendant from using plaintiffs name for defendant’s own commercial or promotional purposes, and for an order granting an inquest to determine plaintiffs damages. Defendant cross-moved for summary judgment dismissing the complaint and for leave to amend the answer to the complaint in order to add additional affirmative defenses. Because defendant challenged the constitutionality of the aforesaid statute, this court gave notice, pursuant to CPLR 1012 (b), to New York State Attorney General Eliot Spitzer, that the constitutionality of General Business Law § 397 was involved in this action. He did not intervene, as CPLR 1012 (b) permitted him to do.
In an earlier decision and order, this court had denied the motion, and the branch of the cross motion seeking summary judgment, because, as correctly argued by defendant in spite of its moving for summary judgment, there was a question of fact that requires a trial in this action. The attorneys for the parties subsequently stipulated to this court’s reconsidering the part of this court’s decision denying the party’s motions for summary judgment, and to restore their motions for summary judgment to be heard before this court, on the basis that they agreed that the court-found question of fact is not an element of General Business Law § 397 and that the constitutionality of the statute should be considered only on its face.
Parties cannot consent to bind a court to determine a constitutional question. That is because a court should not reach a constitutional challenge before it is necessary to do so (Peters v New York City Hous. Auth., 307 NY 519, 527 [1954]). A court should only declare a statute unconstitutional as a last resort (Lighthouse Shores v Town of Islip, 41 NY2d 7, 11 [1976]).
Plaintiff (the Met) is a not-for-profit corporation with its principal place of business in Lincoln Center, New York, New York. The Met is a world-renowned opera company. In about 1995, an electronic libretto display system was installed for each seat at the Met. The system provides a simultaneous *505 translation of each opera as it is presented. Defendant Figaro Systems, Inc. is a New Mexico corporation which transacts business in New York State.
Plaintiff complains that it received through the mail from defendant a brochure advertising defendant’s “Simultext” system, which defendant claims can display a simultaneous translation of an opera as it occurs on a stage, and that defendant represented that its system is installed at the Met, which plaintiff alleges is not true. The brochure directs the reader to defendant’s Web site for “the most current listing of clients.” The Met is included in that Web site list of “Existing Installations.”
Plaintiffs general counsel asserts that plaintiff has acted to protect its name for over a century, and has sent hundreds or thousands of cease and desist letters, as well as commenced litigation against those who have used the name of plaintiff without its consent for their own gain. She further states that no company whose product the Met uses is allowed to utilize the Met’s name without the written consent of the Met. Furthermore, she contends that the Met developed its own simultaneous translation system called “Met Titles,” though she acknowledges that two former employees of plaintiff who had worked on developing plaintiffs system later became principals of defendant and patented defendant’s Simultext system. Plaintiff and those former employees entered into a no-cost, perpetual “license agreement” which gave plaintiff the right to use any elements of the product that the employees developed without facing a claim of patent infringement. Defendant never sought nor received written consent to use plaintiffs name in defendant’s brochure or on defendant’s Web site. Plaintiff’s general counsel demanded of defendant, orally and in writing, that defendant cease and desist using plaintiffs name. Defendant did not do so, and this action ensued. Thereafter, defendant agreed to stop using plaintiffs name on defendant’s Web site, but only for 10 days, and did not agree to remove plaintiffs name from defendant’s other promotional materials. Plaintiff specifically disputes that its titles system is the same as defendant’s, and therefore avers that defendant’s brochure and Web site are misleading. Defendant asserts that the systems are the same, and thus contends that its brochure and Web site are accurate in stating that defendant’s titles system is installed at the Met. There is the question of fact.
It is the burden of the movant on a motion for summary judgment to demonstrate his, her, or its entitlement to summary *506 judgment as a matter of law (Ferrante v American Lung Assn., 90 NY2d 623, 631 [1997]). Once the movant does so, the opponent of the motion must show that a trial is required on a material issue(s) of fact (see Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966, 967 [1988]).
General Business Law § 397 provides in pertinent part:
“1. No person, firm, association or corporation shall use, for advertising purposes or for purposes of trade, the name, symbol, device or other identification of any non-profit corporation . . . , without having first obtained the written consent of such non-profit corporation . . . Any violation of this section shall be a misdemeanor . . .
“3. Whenever there shall be an actual or threatened violation of subdivision one of this section, the corporation . . . affected thereby may maintain an equitable action in the supreme court of this state to prevent and restrain said actual or threatened violation; and may also sue and recover damages for any injuries sustained by reason of any such violation, and if the defendant shall have knowingly violated subdivision one of this section, the jury, in its discretion may award exemplary damages.”
The statute constitutes a complete prohibition against using plaintiffs name for purposes of advertising or trade without the written consent of plaintiff.
The only constitutional challenge that defendant raises to General Business Law § 397 is under the First Amendment to the United States Constitution. Commercial speech is protected by the First Amendment. Although contrary to the plain language of the First Amendment, it has been held numerous times that its protection is not absolute, including as to commercial speech (see e.g. Florida Bar v Went For It, Inc., 515 US 618, 623 [1995]). Blanket prohibitions against nonmisleading, accurate commercial speech regarding a commercial product must be reviewed with “special care,” and “rarely survive constitutional review.” (44 Liquormart, Inc. v Rhode Island, 517 US 484, 504 [1996].) Regulation of commercial speech is reviewed under the First Amendment through a four-part analysis:
“At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted *507 governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.” (Lorillard Tobacco Co. v Reilly, 533 US 525, 554 [2001], quoting Central Hudson Gas & Elec. Corp. v Public Serv. Commn. of N.Y., 447 US 557, 566 [1980].)
In light of that mandated analysis, the parties misconstrue in their stipulation the materiality of the holding of this court in its earlier opinion on the motion and cross motion that there is a question of fact as to whether the statements by defendant in its brochure and on its Web site were accurate, and that, if not, then the statements constituted misleading speech. Although the parties are correct in their stipulation “that truth or falsity of the advertisement is not an element of the statute on its face,” that is not the issue, but rather it is whether, in the analysis of General Business Law § 397’s infringement upon defendant’s commercial speech, the speech was misleading and thus not entitled to First Amendment protection. That truth or falsity is not an element of the statute may be at least in part its constitutional undoing.* Given the dispute between the parties as to whether defendant’s brochure and Web site were misleading, there is a question of fact which must be tried for the court to determine whether the statute passes constitutional muster under the First Amendment. If in deciding the constitutional issue the court determines that the speech is misleading, then the speech is not protected by the First Amendment, and the court need not, and indeed must not, reach the constitutional issue.
Although leave to amend an answer is to be freely granted under CPLR 3025 (b), amendment should not be permitted when the proposed defense(s) is not meritorious (Crimmins Contr. Co. v City of New York, 74 NY2d 166, 170 [1989]; see Ancrum v St. Barnabas Hosp., 301 AD2d 474, 475 [1st Dept 2003]). *508 Defendant has not demonstrated that its proposed amendments have at least arguable merit. First, equitable estoppel does not apply because General Business Law § 397 requires written consent, and plaintiffs artistic director, James Levine, neither had authority to bind plaintiff nor did he authorize the statement at issue in the brochure of defendant and on its Web site. Second, defendant has not shown that plaintiff acted with bad faith or had unclean hands. Third, defendant has not demonstrated that it is no longer promoting its product at all by using plaintiffs name, and thus its affirmative defense of mootness and/or futility has not been shown to have prima facie merit. Fourth, General Business Law § 397 is not vague. Fifth, plaintiff is not attempting to interfere with defendant’s patent, and thus federal patent laws do not preempt General Business Law § 397 under the circumstances (cf. Molina v Phoenix Sound, 297 AD2d 595, 598-599 [1st Dept 2002] [Civil Rights Law § 51 was not preempted by the federal Copyright Act]). Sixth, defendant has not shown that principles of comity and/or international law should limit or bar plaintiffs request for relief under General Business Law § 397, which is not restricted to activities in our state (unlike Civil Rights Law § 51 which, by its terms, only applies to actions within New York State [Reilly v Rapperswill Corp., 50 AD2d 342, 345 (1st Dept 1975)]).
Therefore, to the extent that the motion and cross motion were restored by stipulation, they have been denied by this court’s separate February 12, 2005 decision and order. The branch of the motion seeking amendment of the answer was denied by this court’s prior decision and order.

 The Association of the Bar of the City of New York Committee on State Legislation in disapproving the bill which led to General Business Law § 397, effective September 1, 1961, questioned whether nonprofit organizations should be afforded such a special, very broad, legal protection, without including a statutory element in the prohibited actions that the public would likely be deceived into believing that the advertised or traded goods or services came from, were connected to, or sponsored by the not-for-profit organization, as in previously existing law.