Harry B. Frank, J.
The plaintiff, Pat Paulsen, a well-known television performer and comedian, moves for a preliminary injunction to enjoin defendant, Personality Posters, Inc., “ from marketing, selling and otherwise dealing in a commercial poster embodying a photograph of the Plaintiff which poster was derived from an unpublished photograph of the Plaintiff which is owned by the Plaintiff. ’ ’ Defendant corporation is in the business of marketing posters of various personalities throughout the United States.
The photograph involved indeed bespeaks the nature of plaintiff’s occupation louder than the proverbial “ thousand words ”. A soulfully expressioned plaintiff attired in beruffled cap and prim frock, in a style which might best be characterized as “ latter-day Edna May Oliver,” is shown holding an unlit candle in one hand while his other arm cradles a rubber tire which is hoisted onto his right shoulder. A contemporary touch is added by a banner draped across plaintiff’s chest, in the manner, if not with the style, of a beauty pageant contestant, which bears the legend “ 1968 ”. The complained of-posters, distributed and marketed by defendant, are nothing more than enlargements, some 30 by 40 inches in size, of the afore-described photograph, with the addition of the words ‘ ‘ for president ’ ’ at the bottom in two and one-half-inch-letters.
It is undisputed that the original photograph was sent to defendant corporation in late 1967 by plaintiff’s agent, Ken Kragen. The parties differ sharply, however, as to the basis on which the picture was submitted. Kragen asserts that he spoke with a representative of the defendant corporation toward the end of 1967 about the possibility of using the photograph for a New Tear’s poster and inquired whether defendant would be interested in a license agreement for such purpose. According to Kragen, the photograph was sent, at the request of defendant’s representative, for inspection in connection with such proposal and with the clear understanding that defendant ‘ ‘ would be able to use the photograph only in connection with a license agreement with royalties going to our client ” and that *446 defendant subsequently rejected such offer. Defendant’s president, on the other hand, contends that the photograph was sent, unsolicited, by plaintiff’s agent from whom several phone calls were thereafter received urging that defendant undertake distribution of the picture in poster form in aid of a publicity campaign being carried on in behalf of plaintiff. Defendant flatly denies that any limitation whatsoever was placed on the time or manner in which such distribution was to be made, and states that such matters were left solely to its discretion, and that the photograph was submitted to it with full authorization for unlimited publication and distribution. Defendant further asserts that it frequently receives photographs for proposed poster distribution from press agents seeking publicity for their clients and that the submission of plaintiff’s photograph was in accordance with this customary practice.
Whatever the circumstances surrounding the receipt of the photograph, it is conceded that defendant made no use thereof until July, 1968 at which time it began marketing and circulating the posters in issue. It is clear that the decision to distribute the posters at that time was directly related to the interest engendered by plaintiff’s current comedy routine which is based upon his entry into the presidential race as the ‘ ‘ Put-On Presidential Candidate of 1968 ” under the banner of the Stag party. Satrical or otherwise, plaintiff’s aspirations and his provocative comments on various current issues have been aired with regularity on the nationally televised highly popular “ Smothers’ Brothers ” program. In addition, plaintiff’s candidacy has been the subject of comment by other communications media, including a lengthy front page news article in the Wall Street Journal (Aug. 15, 1968), he has received several votes in recent primary elections, and he has participated in various activities traditionally associated with political campaigning.
In conjunction with his comedy routine and presidential candidacy, plaintiff has undertaken an extensive merchandising program whereby he has granted an exclusive license to a California company in connection with all campaign buttons, stickers and posters relating to the “ Pat Paulsen for President ” campaign, and it is alleged that defendant’s distribution of the posters has infringed upon and interfered with such license arrangement. While defendant’s vice-president, in response to a complaint by plaintiff’s attorney, indicated in a letter dated July 23, 1968 that distribution of defendant Paulsen’s posters would be discontinued, the moving papers allege that “ Personality Posters continued and continues to this day its national sales distribution and marketing of the infringing poster.” *447 The application for injunctive relief is predicated upon the following: (1) an alleged invasion of plaintiff’s right of privacy in violation of section 51 of the Civil Eights Law, and (2) an alleged violation of an infringement upon plaintiff’s common-law copyright in the photograph which is embodied in the complained-of posters.
It is well settled that the drastic remedy of a temporary injunction is not to be granted unless a clear right thereto is established by the moving papers. The plaintiff’s rights must be certain as to the law and the facts and the burden of establishing such an undisputed right rests upon the plaintiff. (Town of Southeast v. Gonnella, 26 A D 2d 550, mot. for lv. to app. dsmd. 18 N Y 2d 727.) The normal reluctance to impose a summary restraint in advance of a full and complete trial is particularly acute in a case involving distribution of printed matter (see Rosemont Enterprises v. Random House, 366 F. 2d 303).
We turn first to plaintiff’s claim under section 51 of article 5 of the New York Civil Eights Law, captioned “Eight of Privacy,” which authorizes both injunctive relief and damages where a person’s “ name, portrait or picture is used within this state for advertising purposes or for the purposes of trade ” without obtaining such person’s written consent.
While considerations of social desirability may sometimes have led to a liberal construction of such statutorily derived “ right of privacy ”, troublesome confrontations with constitutionally protected areas of speech and press have also caused our courts to engraft exceptions and restrictions onto the statute to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest. (See Spahn v. Julian Messner, Inc., 18 N Y 2d 324.)
Where the unauthorized use of name or picture has been purely for ‘ ‘ advertising purposes ’ ’, in the sense of promoting the sale of a collateral product, stringent enforcement of the statutory prohibition has presented comparatively little difficulty and relief from such “ commercial exploitation ” has been liberally granted even to those who might be characterized “ public figures ”. (See Manger v. Kree Inst. of Electrolysis, 233 F. 2d 5; Flores v. Mosler Safe Co., 7 N Y 2d 276; Garden v. Parfumerie Rigaud, 151 Misc. 692; Hofstadter and Horowitz, Development of Right of Privacy in N. Y., p. 28.) A far more restrictive treatment, however, has been accorded the proscription against use “ for the purposes of trade ”, particularly where the use has been in furtherance of the business of a communications medium. Consonant with constitutional considerations, it has consistently been emphasized that the statute was *448 not intended to limit activities involving the dissemination of news or information concerning matters of public interest and that such activities are privileged and do not fall within 11 the purposes of trade ” contemplated by section 51, notwithstanding that they are also carried on for a profit (Humiston v. Universal Film Mfg. Co., 189 App. Div. 467; Lahiri v. Daily Mirror, 162 Misc. 776; Callas v. Whisper, Inc., 198 Misc. 829, affd. 278 App. Div. 974, affd. 303 N. Y. 759; Booth v. Curtis Pub. Co., 15 A D 2d 343). Thus, it was early held that newspapers, magazines, and newsreels are exempt from the statutory injunction when using a name or picture in connection with an item of news or one that is newsworthy and such privileged status has also been extended to other communications media including books, comic books, radio, television and motion pictures. (See Gautier v. Pro-Football, 278 App. Div. 431, affd. 304 N. Y. 354; Dallesandro v. Holt & Co., 4 A D 2d 470.) Indeed, it is clear that any format of ‘ ‘ the written word or picture ’ ’, including posters and handbills (see Rubino v. Slaughter, 136 N. Y. S. 2d 873; 47 N. Y. Jur. 97, Privacy, § 25), will be similarly exempted in conjunction with the dissemination of news or public interest presentations (Spahn v. Julian Messner, Inc., 18 N Y 2d 324, supra).
The scope of the subject matter which may be considered of 11 public interest ” or “ newsworthy ” has been defined in most liberal and far-reaching terms. The privilege of enlightening the public is by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general. (See Gautier v. Pro-Football, supra; Spahn v. Julian Messner, Inc., supra; Dallesandro v. Holt & Co., supra; Goelet v. Confidential, Inc., 5 A D 2d 226; Prosser, Torts, pp. 845-847; cf. University of Notre Dame v. 20th Century Fox, 22 A D 2d 452.) An even more liberal view of the permissible limits of such privileged expression has recently been enunciated by the United States Supreme Court in Time, Inc. v. Hill (385 U. S. 374) which involved the application and construction of the New York “ Bight of Privacy” statute here relied upon. The court there made clear that such statute must be construed in light of the primacy of the far-reaching constitutional protections for speech and press which afford immunity even to false or fictional reports of matters of public interest unless published with knowledge of their falsity or in reckless disregard of the truth. Its expansive construction of the vast range of matter, both informative and entertaining and irrespective of timeliness or importance of the ideas seeking expression, which *449 comes within the ambit of constitutional protection is consistent with its conviction that, “ A broadly defined freedom of the press assures the maintenance of our political system and an open society (Time, Inc. v. Hill, supra, p. 389.)
A logical corollary of the privileged status occupied by the newsworthy is “ the rule that a public figure, whether he be sucji by choice or involuntarily, is subject to the often searching beam of publicity and that, in balance with the legitimate public interest, the law affords his privacy little protection ” (Spahn v. Julian Messner, Inc., supra, p. 328). Such maxim is a realistic recognition that a public figure or personality, by the very nature and character of such status, evokes public interest in his doings and that his activities are generally speaking always “ news ”. (See Goelet v. Confidential, Inc., supra; cf. Estate of Hemingway v. Random House, 49 Misc 2d 726, affd. 25 A D 2d 719.)
In the instant case, plaintiff is ooneededly a well-known public personality by professional choice. As such, his affairs would ordinarily engender considerable public interest and, indeed, as an entertainer he actively seeks to promote and stimulate such public attention to enhance his professional standing. In pursuit of such attention he has projected himself into the national political scene, a sphere which is itself always ‘ ‘ newsworthy ” and which propels into such category all, irrespective of prior status, who aspire to participate therein. It is, moreover, an arena whose participants have traditionally been the fairest of all game for unbridled, unrestrained public comment and criticism ranging from the ridiculous to the scurrilous. Limitations upon the permissible in political expression are almost nonexistent. It is the strength of our political system that it can survive' and flourish in such matrix, where the sensibilities of the participants must bow to the superior public interest in completely unfettered and unabridged free discussion of whatever persuasion, merit or style. “ The risk of this exposure is an essential incident of life in a society which places a primary value on freedom of speech and of press. ’ ’ (See Time, Inc. v. Hill, supra, p. 388.)
It is apparently plaintiff’s position that since “he is only kidding ” and his presidential activities are really only a ‘ ‘ publicity stunt ’ ’ they fall outside the scope of constitutionally protected matters of public interest. Such premise is wholly untenable. When a well-known entertainer enters the presidential ring, tongue in cheek or otherwise, it is clearly newsworthy and of public interest. A poster which portrays plaintiff in that role, and reflects the spirit in which he approaches said role, is *450 a form of public interest presentation to which protection must be extended. That the format may deviate from traditional patterns of political commentary, or that to some it may appear more entertaining than informing, would not alter its protected status. It is not for this or any court to pass value judgments predicated upon ephemeral subjective considerations which would serve to stifle free expression. “ What is one man’s amusement, teaches another’s doctrine ” (Winters v. New York, 333 U. S. 507, 510). Thus, whether the poster involved be considered as a significant satirical commentary upon the current presidential contest, or merely as a humorous presentation of a well-known entertainer’s publicity gambit, or in any other light, be it social criticism or pure entertainment, it is sufficiently relevant to a matter of public interest to be a form of expression which is constitutionally protected and “ deserving of substantial freedom.” (Cf. University of Notre Dame v. 20th Century Fox, 22 A D 2d 452, supra.)
Of course, it is clear that while plaintiff is ostensibly seeking redress for an alleged “ violation of his privacy ”, it is not his privacy at all that concerns him. Privacy in its usual sense is hardly the goal' of an entertainer or performer. What such a figure really seeks is a type of relief which will enable him to garner financial benefits from the pecuniary value which attaches to his name and picture. While such concept, which is termed the ‘ ‘ right of publicity ’ ’, has been accorded some limited recognition (see Haelan Labs. v. Topps Chewing Gum, 202 F. 2d 866), the courts of this State have evidenced no inclination to adopt or follow such construction within the context of section 51. On the contrary, it has been made clear that the purpose of the statute is to redress injury for invasions of a “ person’s right to be let alone ”, with recovery being grounded on the mental strain, distress, humiliation and disturbance of the peace of mind suffered by such person, hardly what plaintiff here seeks, and that the statute was not enacted to fill gaps in the copyright law or to afford substitute relief for breaches of contract or violations of various other species of property rights. (See Gautier v. Pro-Football, 278 App. Div. 431, 438, 439, affd. 304 N. Y. 354, 361, and concurring opn. pp. 361-362; Wrangell v. Hathaway Co., 22 A D 2d 649.)
Moreover, even where the ‘ * right of publicity ’ ’ is recognized, it does not invest a prominent person with the right to exploit financially every public use of name or picture. What is made actionable is the unauthorized use for advertising purposes in connection with the sale of a commodity. (Chaplin v. National Broadcasting Co., 15 F. R D. 134.) The “ right of publicity ”, *451 therefore, like that of ‘ ‘ privacy ” is at best a limited one, within the context of an advertising use, and would be held to have no application where the use of name or picture, as is here the case, is in connection with a matter of public interest. That such use is constitutionally protected and must supersede any private pecuniary considerations is conceded even by those who urge more widespread recognition of a distinct property right of publicity. (See, e.g., Nimmer, Right of Publicity, 19 Law and Contemporary Problems, 203, 216.)
Thus, in the present case, where the poster in question appears privileged by virtue of its public interest character, plaintiff has failed to establish any clear legal or factual right, whether viewed within the context of either ‘ ‘ right of privacy ’ ’ or 1 ‘ right of publicity ’ ’, which would warrant the granting of the preliminary injunction sought.
In addition, it should be noted that such injunctive relief could not in any event be granted on the present application since the papers submitted are fatally defective in failing to appropriately set forth, in either the pleadings or affidavits, a wrongful use of the portrait or picture “ within this State ”. Such is essential to establish a cause of action under section 51 (see La Lumia v. Schwartz, 23 A D 2d 668), and references to “national sales distribution and marketing ” are insufficient for such purpose (see Pittera v. Parade Pubs., 30 Misc 2d 706, mod. on other grounds, 15 A D 2d 882; Cardy v. Maxwell, 9 Misc 2d 329). Since such showing is a requisite to any further steps which plaintiff may hereafter take to invoke the statute, he is granted leave to serve an amended complaint containing appropriate allegations in that regard.
We turn now to plaintiff’s second basis for injunctive relief, a violation of the common-law copyright which he alleges he had in the original photograph which was sent to defendant.
A common-law copyright entitles the proprietor of an intellectual or artistic production to the absolute and exclusive use thereof prior to its publication, and to the right of first publication of the work. (See Chamberlain v. Feldman, 300 N. Y. 135; 36 N. Y. Jur., Literary Property and Copyright, § 4, p. 156; 18 C. J. S., Copyright and Literary Prop., § 2.) Such copyright terminates, however, upon the owner’s assent to general publication of such work. (See A. J. Sandy, Inc. v. Junior City, 17 A D 2d 407; 36 N. Y. Jur., p. 156, supra.) While submission of the work to a particular person, or selected group of persons, for a limited purpose, and without right of diffusion, reproduction, distribution or sale, would be considered a “ limited publication ” which would not result in loss of the common-law *452 copyright (see White v. Kimmell, 193 F. 2d 744, 746-747; American Visuals Corp. v. Holland, 239 F. 2d 740, 744), there is sharp disagreement between the parties herein as to whether the photograph was sent to defendant for a limited purpose or whether, as defendant claims, it was a completely unrestricted and unlimited submission for purposes of general publication, which would have resulted in a loss of any common-law copyright, which plaintiff may have had in the work (see American Visuals Corp. v. Holland, supra; Grant v. Kellogg Co., 58 F. Supp. 48; cf. Jewelers’ Mercantile Agency v. Jewelers’ Weekly Pub. Co., 155 N. Y. 241). Since such sharp factual dispute on the issue of publication must be resolved at a trial and precludes the granting of the preliminary injunctive relief sought (see Morrin v. Structural Steel Bd. of Trade, 231 App. Div. 673), it becomes unnecessary to consider, at this juncture, whether the moving papers sufficiently establish that plaintiff in fact possessed a common-law copyright in the photograph in issue.
While plaintiff’s papers stress the need for immediate relief by reason of the proximity of the forthcoming presidential election, such urgency is more apparent than real. He faces no irreparable injury. The entire thrust of his claim, whether founded on 1 ‘ privacy ” or “ common-law copyright ’ ’, is the financial loss which he has allegedly suffered, and will continue to suffer, by reason of defendant’s activities. If plaintiff should ultimately prove to be entitled to a recovery, under either of his causes of action, monetary damages will be available to him and will serve to fully and adequately compensate him (cf. Maloney v. Katzenstein, 135 App. Div. 224).
Upon all of the foregoing, the motion for a temporary injunction is in all respects denied.