TITAN SPORTS, INC., Plaintiff,

v.

COMICS WORLD CORPORATION, Comics World Corporation (U.S.A.), Comics World, Inc., Starlog Group, Inc., O'Quinn Studios, Inc., Kerry O'Quinn and Norman Jacobs, Defendants.

No. 87 CIV. 0178 (PKL).

United States District Court,
S.D. New York.

July 13, 1988.

**1316**

Frankfurt, Garbus, Klein & Selz, P.C. (Edward H. Rosenthal, of counsel), New York City, for plaintiff.

Perles, Albert & Beale (David A. Beale, of counsel), New York City, for defendants.

## OPINION & ORDER

LEISURE, District Judge:

This case involves the extent of coverage of section 51 of the New York Civil Rights Law [1] as it relates to the publication of large-sized photographs or "magazine posters" depicting professional wrestlers, without the consent of the wrestlers or the owners of the rights to use their names and likenesses in any and all media.[2] Plaintiff, the owner of the rights of publication of many professional wrestlers, claims that the defendants have violated section 51 by publishing over-sized photographs of these performers. These photographs are folded into defendants' magazines devoted to the topic of wrestling, and sold in newsstands in New York State and across the nation. Defendants claim that these photos are protected by the First Amendment, since they depict newsworthy subjects of great public interest, and therefore do not constitute an improper use for trade or advertising purposes.

The parties have made cross-motions for summary judgment. For the reasons stated below, defendants' motion is granted, and plaintiff's motion is denied and the complaint is dismissed.

---

**1.** Civil Rights Law § 51 provides in pertinent part:

Any person whose name, portrait or picture is used within this state for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by section fifty of this article, the jury, in its discretion, may award exemplary damages.

N.Y. Civil Rights Law § 51 (McKinney 1988 Supp.).

**2.** Plaintiff's original complaint asserted claims under the Lanham Federal Trademark Act, particularly 15 U.S.C. § 1125(a), and also asserted claims of dilution of trademark, unfair competition and unjust enrichment. By stipulation between the parties so ordered by the Court on November 16, 1987 (hereinafter "November 16, 1987 Stip."), plaintiff dismissed the above four causes of action and defendants dismissed three affirmative defenses. In this way, the issues were narrowed to the sole question now before the Court: the extent of coverage of section 51 of the Civil Rights Law.

### I.

The following statement of facts is based on a Stipulation of Facts For Purposes of the Motion (hereinafter "Stip. Facts") entered into by the parties on or about December 7, 1987. Plaintiff, Titan Sports, Inc. ("Titan"), is a corporation organized under the laws of the State of Massachusetts with its principal place of business in Connecticut. Plaintiff is the owner of all rights in the names and likenesses of many professional wrestlers [3] who perform wrestling services for Titan under the auspices of the World Wrestling Federation (the "WWF"). Stip. Facts, ¶ 1. The WWF wrestlers perform on a regular basis at approximately two hundred wrestling arenas throughout the United States and Canada, including Madison Square Garden in New York City, the Nassau Coliseum in Uniondale, New York, the Meadowlands in East Rutherford, New Jersey, and the Spectrum in Philadelphia, Pennsylvania. Stip. Facts, ¶ 3.

The sport of professional wrestling has enjoyed an enormous growth in popularity in recent years. "Wrestlemania" has made the participants in the sport the subject of much attention and publicity. The parties have stipulated that the WWF wrestlers are "public figures." Stip. Facts, ¶ 2.

Defendants Comics World Corp., Starlog Group, Inc., and O'Quinn Studios, Inc. are corporations organized under the laws of the State of New York with their principal places of business in New York. Defendants Kerry O'Quinn and Norman Jacobs are officers and directors of Comics World Corp. and Starlog Group, Inc., and are both citizens and residents of New York. Defendants publish, sell and distribute magazines such as "Wrestling Poster Magazine," "Wrestling All Stars," "Wrestling All Stars Super Giant Pin-ups," "Superstar Wrestlers Photo Album" and "Wrestling Scene," or published such magazines in the past.

Several of defendants' magazines include large, folded photographic inserts variously known as "magazine posters," pin-ups, pullouts, centerfolds, or fold-outs, which are affixed by staples or otherwise to the inside of normal magazines, and often cannot be completely viewed without removing them entirely from the magazine. When thus pulled out and unfolded, defendants' inserts are approximately $16'' \times 22''$, or four-times the surface area of a normal $8'' \times 11''$ magazine page. These photos depict professional wrestlers, including many of the WWF wrestlers, in posed or live-action shots. Defendants often use these photos without the consent, written or otherwise, of the wrestlers or the owners of their rights of publication. Defendants have also used the names, and reprinted pictures of the wrestlers who have been featured in the magazines in advertisements soliciting subscriptions and the purchase of back issues of the magazines.[4]

Plaintiff has licensed the rights of publication of the WWF wrestlers to others in the past. From about May, 1985 to about May, 1987, Titan was a party to a license agreement with Scandecor International ("Scandecor") pursuant to which Scandecor had the right to sell posters using the names and likenesses of WWF wrestlers. Pursuant to this license, Scandecor sold posters of Hulk Hogan, "Rowdy" Roddy Piper and Ricky Steamboat. Stip. Facts, ¶ 5. Plaintiff intends to enter into a new license for the sale of the posters in the near future. Stip. Facts, ¶ 6. In addition,

---

3. This group includes such wrestlers as Lou Albano, King Kong Bundy, Brutus Beefcake, Junkyard Dog, Tony Atlas, "Superstar" Billy Graham, Ivan Putsky, Chief Jay Strongbow, Randy "Macho Man" Savage, Bruno Sammartino, Ricky Steamboat, Jesse Ventura, Hulk Hogan, Paul Orndorff, Greg Valentine, Billy Jack Haynes, Jimmy Snuka, The British Bulldogs, Rick Martel and Hillbilly Jim.

4. For example, on page 5 of defendants' "Wrestling All Stars Poster Magazine # 3" there appears an advertisement for another of defendants' magazines, "Wrestling Poster Magazine," with reprints of the covers of issues # 1–7, and a list of each wrestler whose "poster" appears in that issue; e.g., *WRESTLING POSTER MAGAZINE # 2:* Kerry Von Erich, Hulk Hogan, Rocky Johnson, Rick Martel, Mil Mascaras, Greg Valentine, Antonio Inoki, Jimmy Valiant, Ric Flair, Tony Atlas." At least four of these are WWF Wrestlers.

Titan regularly sells posters of the wrestlers at live wrestling events and through a mail order operation. Stip. Facts, ¶ 7.

These large photographic inserts are the subject of this action. Plaintiff claims that because of their size and the way they are placed in the center of the magazines, away from corresponding news articles, that they are more like "posters" than any news photo or similar dissemination of information, and that defendants only include them inside the covers of magazines to disguise a purely commercial exploitation of the wrestlers' names and images. It seems only to be the extra-large size of the photos that plaintiff argues against, since Titan does not contend that even full-page photos of the wrestlers in magazines violates section 51, as long as the photos do not exceed the "normal" page size of defendants' magazines, 8" × 11". Stip. Facts, ¶ 9.

Defendants counter this assertion by pointing out that the photos are certainly newsworthy, and furthermore, in every issue of defendants' "poster magazines" is a corresponding news article about each of the wrestlers featured in the photo inserts of that magazine. They claim that the fact that the magazines contain the inserts does not change the way they are merchandized and distributed, which is identical to that of most other newsstand magazines. The large photographic inserts are claimed to be part and parcel of the magazines, and since they depict newsworthy subjects, they deserve the full protection of the First Amendment. The size of the photos, defendants contend, is not determinative of this protection.

## II.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." As the Supreme Court has noted, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), (quoting Fed.R.Civ.P. 1) (citation omitted). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)).

The Court must first look to the substantive law governing the case to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the Court has determined what facts are material, it must then determine whether there is a genuine issue as to a material fact. At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. The standard for summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250, 106 S.Ct. at 2511.

■ The party seeking summary judgment always bears the initial burden of informing the Court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. at 323, 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the dis-

trict court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. When, as in this case, both sides move for summary judgment, the Court must apply the same standard for both motions. *Eastman Machine Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). Mindful of the foregoing principles, the Court now turns to the merits of the parties' cross-motions for summary judgment.

### III.

The parties in this action have stipulated that the laws of the State of New York apply to the case at hand. November 16, 1987 Stip., ¶ 7. This cause of action is brought under section 51 of New York Civil Rights Law.[5] This section has been narrowly construed insofar as it affects the freedoms of speech and press protected by the First Amendment.

"In order to make out a claim under section 51, a plaintiff must establish (1) that the defendant used plaintiff's name, portrait or picture within the state, (2) for purposes of advertising or trade, and (3) without first obtaining plaintiff's written consent." *Lerman v. Flynt Distributing Co.,* 745 F.2d at 129 (citing *Lerman v. Chuckleberry Pub., Inc.,* 496 F.Supp. 1105, 1107–08 (S.D.N.Y.1980)). While plaintiff has shown that there was a use of the WWF wrestlers' pictures in New York, and that this use was not consented to in writing or otherwise, it is on the second element that plaintiff's claim fails: defendants' use is protected by the First Amendment, and, accordingly, does not constitute an improper use for trade or advertising purposes.

### A.

There can be little doubt that defendants are publishing magazines or newsstand publications. The works in question are completely devoted to the sport of professional wrestling. They contain news articles, excerpts from interviews, small and large photos, all covering the practitioners of this sport. The issues of defendants' works that contain oversized photographic inserts are marketed and distributed in the same manner as any other of defendants' magazines, and the same as most magazines in the industry intended for newsstand sale. Affidavit of Norman Jacobs (hereinafter "Jacobs Aff."), sworn to on December 23, 1987, ¶ 25. For example, they contain advertising, unsold copies are returnable to the publisher for full credit, the copies are numbered or dated, and have a very limited shelf-life, usually of less than a month. *Id.* With or without the photo inserts, defendants' product is a *bona fide* newsstand publication.

### B.

New York State and Federal courts have interpreted section 51 so as to exempt the publication in magazines of "newsworthy" items and matters of public interest. The New York Court of Appeals explained this exception in *Stephano v. News Group Publications, Inc.,* 64 N.Y.2d 174, 474 N.E.2d 580, 485 N.Y.S.2d 220 (1984):

> The statute does not define trade or advertising purposes. However, the courts have consistently held, from the time of its enactment, that these terms should not be construed to apply to publications concerning newsworthy events or matters of public interest.... The exception reflects Federal and State constitutional concerns for free dissemination of news and other matters of interest to the public...."

64 N.Y.2d at 184, 474 N.E.2d 584–85, 485 N.Y.S.2d at 224–25 (citations omitted).

The sport of wrestling in general, and the WWF wrestlers in particular, have become significantly newsworthy, as subjects of substantial public interest in recent years. *See* Complaint ¶¶ 8, 10; Jacobs Aff.

---

5. For a brief history of the background of this section, *see Lerman v. Flynt Distributing Co.,*

*Inc.,* 745 F.2d 123, 128–29 (2d Cir.1984).

¶ 26. These wrestlers perform on a regular basis at approximately two hundred major wrestling arenas throughout the United States, including Madison Square Garden and the Nassau Coliseum in New York State. They are the subject of approximately thirty regularly published magazines, of which ten titles are published by defendants here. Jacobs Aff. ¶¶ 13, 14. In addition, the WWF wrestlers regularly appear on a variety of cable, broadcast, network, and closed circuit television programs. Defendants have brought forth hundreds of examples of fan mail that they receive about these wrestlers. The wrestlers are truly public personalities, a combination of sports and entertainment figures; and, as mentioned above, the parties have stipulated that they are "public figures." Stip. Facts, ¶ 2.

With such status, the WWF wrestlers are proper subjects for articles and photographs in newsstand publications. "[T]he scope of what constitutes a newsworthy event has been afforded a broad definition and held to include even matters of 'entertainment and amusement, concerning interesting phases of human activity in general.'" *Ann–Margret v. High Society Magazine, Inc.*, 498 F.Supp. 401, 405 (S.D.N.Y. 1980) (citing *Paulsen v. Personality Posters, Inc.*, 59 Misc.2d 444, 448, 299 N.Y.S.2d 501, 506 (Sup.Ct.N.Y.Cty.1968)). The newsworthiness exception applies not only to reports of political happenings and social trends, *see, e.g., Arrington v. New York Times Co.*, 55 N.Y.2d 433, 434 N.E.2d 1319, 449 N.Y.S.2d 941 (1982); *Murray v. New York Magazine Co.*, 27 N.Y.2d 406, 267 N.E.2d 256, 318 N.Y.S.2d 474 (1971), "but extends far beyond to include all types of factual, educational and historical data,"

*Paulsen, supra,* 59 Misc.2d at 448, 299 N.Y.S.2d at 506, for "[w]hat is one man's amusement, teaches another's doctrine." *Winters v. New York,* 333 U.S. 507, 510, 68 S.Ct. 665, 667, 92 L.Ed. 840 (1948). Accordingly, the photos of the WWF wrestlers are proper subjects of newsstand publications.

## C.

1. Advertising Purposes:

■ In order for the photos here "[t]o be a use for advertising purposes, 'the use must appear in or as part of an advertisement or solicitation for patronage.' ... When the advertisement is merely incidental to a privileged use there is no violation of § 51." *Lerman, supra,* 745 F.2d at 130 (citations omitted). In *Herink v. Harper & Row Publishers, Inc.,* 607 F.Supp. 657 (S.D.N.Y.1985), this Court held that

[t]he advertising prong of section 51 is not violated where the use of a plaintiff's name is not designed primarily to solicit purchasers for defendant's products.... Neither does the fact that a writer or publisher has a profit motive or a motive to increase circulation by using the name of a private citizen violate the trade purposes prong of the New York Civil Rights Law provided the content of the writing is informative or newsworthy.

607 F.Supp. at 659–60.

■ Plaintiff's main claim under this prong of the uses test appears to derive from defendants' use of the pictures, portraits and names of the wrestlers in their advertisements soliciting the purchase of back issues of defendants' "poster magazines" by reference to the large photo inserts included in them.[6] But given that the

---

6. See footnote 3, *supra.* Plaintiff did submit an exhibit of a magazine (plaintiff's Exhibit F) which contained extra-large photos of WWF wrestlers and which also had the following message emblazoned at the bottom of each: "TOYOTA—OH WHAT A FEELING!" Defendants have asserted that this magazine is published by an Australian licensee of Comics World, Inc., Universal Magazines Pty. Ltd. ("Universal"). Reply Affidavit of Norman Jacobs, sworn to on January 21, 1988, at ¶¶ 5, 7. Defendants have no control over the production of the magazine, and only licenses the title, concept, editorial and

color photographs to Universal. *Id.* at ¶ 7. The magazine's price is listed only in Australian and New Zealand dollars and has no U.P.C. symbol on the cover, which prevents it from being distributed and sold through the major magazine distribution network, ID Wholesaler. *Id.* at ¶ 6. It is therefore not designed for distribution in the United States. *Id.* Plaintiff has failed to bring forth evidence pursuant to Rule 56(e) of the Federal Rules of Civil Procedure to show that the magazine was in fact published by defendants here. Accordingly, this exhibit does not form a part of this discussion.

photos were published originally in the magazines as a dissemination of matters of public interest, they were not then used primarily for "advertising" purposes. And it is well established in New York that when samples of the contents of magazines are used in later solicitations for subscriptions or the sale of back issues, this does not constitute an improper use for advertising purposes.

In *Velez v. VV Publishing Corp.*, 135 A.D.2d 47, 524 N.Y.S.2d 186 (1st Dep't. 1988), the court stated that:

> Recognizing that the periodical publisher's incidental use of covers or other portions of past editions of its own publications in promotional materials or advertisements is a necessary and logical extension of the clearly protected editorial use of the content of the publication, New York Courts have established an exemption to section 51 of the Civil Rights Law.

135 A.D.2d 49, 524 N.Y.S.2d at 187; *See Humiston v. Universal Film Mfg. Co.*, 189 A.D. 467, 178 N.Y.S. 752 (1st Dep't. 1919); *Booth v. Curtis Publishing Co.*, 15 A.D.2d 343, 223 N.Y.S.2d 737 (1st Dep't.), *aff'd*, 11 N.Y.2d 907, 182 N.E.2d 812, 228 N.Y.S.2d 468 (1962); *Namath v. Sports Illustrated*, 48 A.D.2d 487, 371 N.Y.S.2d 10 (1st Dep't. 1975), *aff'd*, 39 N.Y.2d 897, 352 N.E.2d 584, 386 N.Y.S.2d 397 (1976); *Lerman*, 745 F.2d at 131.

While most of these cases involved the republication of photos used without consent, as in *Booth*, or reprints of past covers containing these photos, as in *Velez*, this Court does not find it significant that defendants here add lists of the names of wrestlers whose pictures have appeared in the large photo-insert form in past issues. This still constitutes a republication of samples of the newsworthy content of defendants' magazines, and is thus protected.

2. Trade Purposes:

■ The Second Circuit in *Lerman* has interpreted section 51's "purposes of trade" provision so as to allow a plaintiff to prevail when an unconsented use of plaintiff's picture or portrait is in conjunction with a matter of public interest only when the plaintiff can satisfy one of the following criteria:

> First, a plaintiff may attempt to demonstrate that the use of plaintiff's name or likeness has no real relation to the discussion, and is thus an advertisement in disguise.... Alternately, a plaintiff may claim that defendant forfeited the privilege for reporting matters on which the public has the right to be informed by proving that the defendant's use was infected with material and substantial fiction or falsity.

745 F.2d at 131–32 (citation omitted). As to the latter criterion, plaintiff has no claim whatsoever, since there is nothing to suggest that defendants' use was other than a *bona fide* photographic representation of the WWF wrestlers. *Compare Ali v. Playgirl*, 447 F.Supp. 723 (S.D.N.Y.1978); *Allen v. National Video, Inc.*, 610 F.Supp. 612 (S.D.N.Y.1985); *Onassis v. Christian Dior-New York, Inc.*, 122 Misc.2d 603, 472 N.Y.S.2d 254 (Sup.Ct.N.Y.Cty.1984), *aff'd*, 110 A.D.2d 1095, 488 N.Y.S.2d 943 (1st Dep't. 1985).

As to the first criterion, this Court cannot agree with plaintiff's argument that the photos here, no matter how large and no matter where they are placed, do not bear any "real relationship" to any discussion in defendants' magazines. On the contrary, defendants' magazines are wholly devoted to the subject of professional wrestling. Each issue contains news about wrestling, and excerpts from interviews with the wrestlers, and every issue apparently has a full-page report about each of the wrestlers featured in the large photographic insert section. The mere fact that the inserts are most often found in the center of the magazine, and are often stapled in such a way as to make it impossible to view them completely without removing them from the magazine does not change the fact that they correspond to and are part of the dissemination of matters of public interest. *Compare Barrows v. Rozansky*, 111 A.D.2d 105, 489 N.Y.S.2d 481 (1st Dep't. 1985).

Magazines regularly divide up articles into two or more parts, placing one part at the front and the rest later on, in order to force the reader's attention to later portions of the magazine (and the advertisements therein), that he or she might not ordinarily get to. This merely makes the complete enjoyment of the newsworthy matters a bit more difficult. Plaintiff is hard pressed to argue that the placement of photographs illustrating a news article in a different part of the magazine is a totally different story, causing the photos not to correspond to the topic of the magazine, and thus to lose their protected status. This argument is without merit.

## IV.

■ Finally, plaintiff argues that the photographic inserts should not be afforded an exemption from the coverage of section 51 since they in fact are posters, and the First Amendment Freedom of Press Clause does not always apply to posters of entertainment figures. Plaintiff relies on two cases, *Brinkley v. Casablancas*, 80 A.D.2d 428, 438 N.Y.S.2d 1004 (1st Dep't. 1981), and *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979), in which plaintiffs prevailed on claims under section 51 to stop the publication, without consent, of posters using their picture or portrait, or that of a figure whose rights of publication were owned by plaintiff. *Brinkley* involved a claim by model Christie Brinkley to enjoin the production and distribution of a poster made from an unapproved shot at a photo session. The defendants had been involved in a commercial enterprise with Brinkley to produce a poster, but had, for some reason, used a photo without the prior approval of the model. And in *Factors*, the defendants had attempted to capitalize on the death of Elvis Presley by coming out with a poster which depicted the singer and the words, "In Memory," three days after the unhappy event. The owners of Presley's rights of publication had not consented to this tribute, and prevailed in their injunction action under section 51.

However, this Court finds both of these cases distinguishable on their facts. First of all, in both cases defendants were selling actual posters, of the type suitable for framing, and printed on high quality, heavy bond paper. They were not selling magazines containing large pull-outs and photographic inserts, that may double as wall-hangings to some readers. In other words, the First Amendment freedom of the press was not really at issue in *Brinkley* and *Factors*. And in *Brinkley*, defendants did not even contest the fact that they were using the picture of Christie Brinkley for "trade purposes" under section 51.

The magazine industry has evolved over the decades in response to purchasers' desires to remove photographs from magazines and pin them up on their walls in display. During World War II, soldiers pinned up magazine photos of Betty Grable on their lockers, walls, and even in aircraft. During the 1950's, the same was done with Marilyn Monroe. Also during the 50's, *Playboy* magazine came out with what is probably the first regularly published photographic "fold-out," their ever popular "centerfolds." And in the 1970's, magazines containing or wholly devoted to fold-outs or "posters" of music personalities began to appear. Defendants merely follow up on this industry trend by including these over-sized photographic inserts in magazines on wrestling, in response to reader demand.

Magazines come in all shapes and sizes. Many are larger than 8" × 11" and, thus, their individual pages are larger. Plaintiff claims not to have any objection to the use of the wrestlers' photos so long as they do not exceed the space of one magazine page; defendants' magazines happen to be a common size of 8" × 11". But defendants could easily print a magazine in which every page is 16" × 22" or larger. The *New York Times* and hundreds of other daily newspapers print a page that is approximately 13" × 22", which, when removed and opened, yields a whopping 26" × 22". This Court need not go further than to point out that the constitutional protection of the freedom of the press does not stop at 8" × 11".

In that defendants' magazines use photos that bear a direct relationship to the newsworthy topic of the magazines, and which bear a direct correspondence to the articles and news information contained therein, this use of over-sized photos is protected by the First Amendment. Defendants' publication of the wrestlers' photographs does not violate section 51.

### Conclusion

For the reasons stated above, plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment dismissing plaintiff's complaint with prejudice is hereby granted. It is hereby ordered that summary judgment be entered for defendant and that plaintiff's complaint be dismissed in its entirety.

SO ORDERED.