TIME INC. and Steve Kagan, Plaintiff,

v.

SAND CREEK PARTNERS,
L.P., Defendant.

SAND CREEK PARTNERS,
L.P., Plaintiff,

v.

TIME INC., Steve Kagan, and
Lyle Lovett, Defendants.

Nos. IP 93–835C, IP 93–836C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 2, 1993.

·ENTRY

Robert P. Johnston, Barnes & Thornburg, Indianapolis, IN, for Time and Kagan.

Craig E. Pinkus, Dutton Overman Goldstein Pinkus, Indianapolis, IN, for Sand Creek.

Max W. Hittle, Jr., Krieg DeVault Alexander & Capehart, Indianapolis, IN, for Lyle Lovett.

BARKER, District Judge.

This matter came before the Court by way of plaintiffs Time Inc.'s ("Time") and Steve Kagan's ("Kagan") (collectively "plaintiffs") Complaint for preliminary injunctive relief against Sand Creek Partners, L.P. ("Sand Creek"), which was substituted as defendant in cause IP 93–835C, and the Complaint of plaintiff Sand Creek in cause IP 93–836C for interpleader against the defendants Time, Kagan, and Lyle Lovett ("Lovett"). Because the actions involved common questions of law or fact, the Court consolidated them, *see* Fed.R.Civ.Pro. 42(a), and held a joint hearing on June 29, 1993, at which it granted Time's and Kagan's' motion for injunctive relief. The Court now enters the following findings of fact and conclusions of law.

## I.  Findings of Fact

1.  Time is a corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of New York.

2.  Sand Creek Partners, L.P. is an Indiana limited partnership organized in the state of Indiana with its principal place of business in the State of Indiana. It operates the Deer Creek Music Center ("Deer Creek") in Noblesville, Hamilton County, Indiana.

3.  Kagan is a citizen of the State of Illinois.

4.  Lyle Lovett is a citizen of the State of Tennessee.

5.  Deer Creek is an open-air venue for live performances. Sales of tickets to Deer Creek performances typically are available to the public.

6.  On June 27, 1993, Kagan was sent to Deer Creek by People Weekly Magazine. People Weekly Magazine is published by Time.

7.  The purpose of Kagan's trip to Deer Creek was to photograph Lovett's concert, and actress Julia Roberts, if she appeared at the concert. Lovett and Roberts, two well-

known celebrities, were married earlier the same day in Marion, Indiana, in a private ceremony, without notice having been previously given to the public.

8. During the performance, Julia Roberts appeared on the stage on two occasions. On at least one of these occasions, she wore her wedding gown. Kagan photographed Roberts. and Lovett, and also took numerous photographs during other portions of the concert.

9. Towards the end of the concert, after having exposed several rolls· of film, Kagan was detained by Deer Creek personnel who took him to a room and questioned him for approximately one hour. They requested the films but Kagan refused to surrender them.

10. Deer Creek personnel then summoned Lt. Gelhausen of the Hamilton County Sheriff's Department. Lt. Gelhausen confiscated the films as evidence, should a subsequent civil dispute ensue.

11. Although plaintiffs requested return of the films from the Hamilton County Sheriff's Department, the films were not returned to plaintiffs. Instead, the Department delivered the films to Sand Creek in the late afternoon of June 28.

12. Sand Creek has possession of the films and has refused to deliver the films to the plaintiffs, although they disclaim any right of entitlement to them. Sand Creek has retained possession until such time as the legal issues respecting entitlement have been resolved.

13. Lovett claims entitlement to the films on the grounds that he possesses the property interest in the dissemination of his likeness and image (and music) pursuant to his contract with Sand Creek.

14. Sand Creek and Lovett assert that the taking of photographs by Kagan occurred without their authorization. Kagan maintains that Sand Creek acquiesced in his taking of the photographs, though he concedes that they were not expressly authorized by either Sand Creek or Lovett.

15. Plaintiffs intend to use the photographs only for "editorial" purposes, not for any commercial exploitation.

## II. Conclusions of Law

1. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

2. The Court has personal jurisdiction over the parties.

3. Pursuant to 28 U.S.C. 1391(a), venue in this action is proper in the Southern District of Indiana.

4. The standard for issuance of a preliminary injunction involves a balancing of the following factors: (1) whether the applicant has an adequate remedy at law; (2) whether the applicant would suffer an irreparable injury; (3) whether the applicant has a likelihood of success on the merits; and (4) an assessment of the harm to both parties. *See Beermart, Inc. v. Stroh Brewery Co.,* 804 F.2d 409, 411 (7th Cir.1986).

5. Under Indiana law, the unauthorized use of photographs of a person for commercial purposes is an invasion of his right of privacy and is actionable. *See Continental Optical Co. v. Reed,* 119 Ind.App. 643, 86 N.E.2d 306, 308 (1949).

6. In general, when a person's picture is used to illustrate a non-commercial, newsworthy article, his interest in the use of his likeness or image must be evaluated in light of constitutional interests found in the First Amendment. *See, e.g., Ault v. Hustler Magazine, Inc.,* 860 F.2d 877, 883 (9th Cir. 1988), *citing, Martinez v. Democrat–Herald Pub. Co.,* 64 Or.App. 690, 669 P.2d 818, 820 (1983).

7. "Newsworthiness" is a First Amendment, Freedom of Press, interest and is to be broadly construed. As one court has explained: "The scope of the subject matter which may be considered of 'public interest' or 'newsworthy' has been defined in most liberal and far reaching terms. The privilege of enlightening the public is by no means limited to dissemination of news in the sense of current events but extends far beyond to include all types of factual, educational and historical data, or even entertainment and amusement, concerning interesting phases of human activity in general." *Rogers v. Gri-*

*maldi,* 695 F.Supp. 112, 117 (S.D.N.Y.1988), *citing, Paulsen v. Personality Posters, Inc.,* 59 Misc.2d 444, 299 N.Y.S.2d 501, 506 (1968).

■ 8. In this matter, the "newsworthiness" of the images depicted on the films has primacy over any privacy rights which Lovett may have in those images. Lovett and Roberts are widely known celebrities and in that sense are public figures and, in addition, their appearance on stage before thousands of people on the day of their highly-publicized but theretofore unannounced and private wedding ceremony, with Roberts still wearing her wedding dress, was a newsworthy event of widespread public interest. This was not a situation where the appropriation involved an attempt to broadcast or publish an entire performance. *See generally, Zacchini v. Scripps–Howard Broadcasting Co.,* 433 U.S. 562, 574, 97 S.Ct. 2849, 2856–57, 53 L.Ed.2d 965 (1977).

■ 9. Plaintiffs have no adequate remedy at law. The news value of the films is directly tied to a publication deadline requiring the films to be delivered to Time's offices in New York City by the end of the day on June 29, 1993. Therefore, plaintiffs will be irreparably harmed if Sand Creek is not enjoined from further interfering with plaintiffs' possession of these films. Plaintiffs' limitation on its use of the films only for "editorial" purposes reflects their newsworthiness and serves its First Amendment interests.

10. Plaintiffs have a reasonable likelihood of succeeding on the merits of their claim. They own the films and are entitled to possession of their property.

11. Sand Creek has disclaimed any interest in the films.

12. The balance of harms support the plaintiffs and the public interest will not be disserved by granting the requested injunction.

13. The Court hereby incorporates the findings and conclusions which it announced from the bench on June 29, 1993.

It is so ORDERED this 2nd day of July, 1993, nunc pro tunc to June 29, 1993.